PER CURIAM
The Texas Workers' Compensation Act "provides the exclusive process and remedies for claims arising out of a carrier's investigation, handling, or settling of a claim for workers' compensation benefits." In re Crawford & Co. , 458 S.W.3d 920, 925-26 (Tex. 2015) (orig. proceeding); see Tex. Mut. Ins. Co. v. Ruttiger , 381 S.W.3d 430, 444, 456 (Tex. 2012). In this original proceeding, we determine whether the Division of Workers' Compensation has exclusive jurisdiction over statutory and tort claims alleging the Act's "bona fide offer of employment" process was misused to fabricate grounds for firing a covered employee.
*752 Because we conclude the trial court lacks subject-matter jurisdiction over the employee's retaliation, conspiracy, and tortious-interference claims against the workers' compensation carrier and its agent, we conditionally grant mandamus relief. The employer's mandamus petition, seeking dismissal or abatement of both related and distinct claims, is not properly before us. See TEX. R. APP. P. 52.3(e) ; see also TEX. R. APP. P. 52.1, 52.3(k)(1)(B), 52.7. Accordingly, we deny the employer's petition without regard to the merits.
Ricky Sayaz suffered a serious injury in the course and scope of his employment with Coil Tubing Solutions, LLC, a workers' compensation subscriber. Coil Tubing notified its carrier, Accident Fund General Insurance Company, who assigned the claim to an insurance adjuster, Kriste Henderson. Accident Fund accepted coverage and paid income and medical benefits to Sayaz.
While Sayaz was recuperating, Coil Tubing sent him two offers for modified-duty work labeled "Bona Fide Offer of Employment." Both letters contained details of the work locations, responsibilities, and hours. The second letter provided (1) a beginning date of either three days after the letter's issuance or immediately after acceptance and (2) an expiration date eleven days after the letter's issuance. The offer purported to be consistent with a physician's work-status report stating that, with certain restrictions, Sayaz could return to work.
Sayaz neither explicitly accepted nor rejected either modified-duty offer, but his wife, Nelda Ramirez, emailed Coil Tubing with concerns about his ability to work and attached information from other doctors. When Sayaz did not accept the offers or return to his former job, Coil Tubing terminated his employment.
Sayaz sued Coil Tubing for (1) wrongful discharge and retaliation under Labor Code section 451.001 and (2) defamation. Ramirez sued Coil Tubing for injuries sustained while caring for Sayaz, as well as loss of household services, pain and suffering, and loss of consortium. Sayaz also sued Accident Fund and Henderson, alleging they aided and abetted Coil Tubing's section 451.002 violation, tortiously interfered with Sayaz's employment relationship, and conspired with Coil Tubing to unlawfully discharge and retaliate against him. According to Sayaz, Accident Fund was complicit in procuring modified-duty job offers that were not legitimate and which served as a pretext for retaliatory discharge. Ramirez asserted no claims against Accident Fund and Henderson.
Relying on our opinions in Crawford and Ruttiger , Accident Fund and Henderson (collectively Accident Fund) filed a plea to the jurisdiction, asserting exclusive jurisdiction lies with the Division of Workers' Compensation. The trial court denied the plea, and the court of appeals summarily denied Accident Fund's petition for mandamus relief.
When an agency has exclusive jurisdiction and the plaintiff has not exhausted administrative remedies, the trial court lacks subject-matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction. In re Entergy Corp. , 142 S.W.3d 316, 321-22 (Tex. 2004) (orig. proceeding). Whether exclusive jurisdiction is vested in the Division as to the claims against Accident Fund is a question of law we review de novo. Id.
The Workers' Compensation Act "provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly investigated, handled, or settled a workers' claim for benefits." Crawford , 458 S.W.3d at 923-24 ; see *753 Ruttiger , 381 S.W.3d at 443, 445, 451. In Ruttiger , we applied that rule to preclude certain Insurance Code and common-law bad-faith claims against the compensation carrier because those claims were at odds with the workers' compensation system's dispute-resolution process. 381 S.W.3d at 443, 445, 450-51. For the same reason, we concluded in Crawford that a host of tort, contract, and statutory claims could not go forward against the carrier in the trial court. 458 S.W.3d at 922, 929. As both Crawford and Ruttiger explain, allowing parties to pursue remedies that circumvent the Division's exclusive jurisdiction would undermine the workers' compensation system's careful benefits-determination and claims-resolution processes. See ids="6876922" index="8" url="https://cite.case.law/sw3d/458/920/#p925">id. at 924 ; Ruttiger , 381 S.W.3d at 440-41, 443.
Not all statutory and common-law claims against a carrier run counter to the Act, but at the same time, neither a claim's label nor the relief requested is determinative of the jurisdictional inquiry. Crawford , 458 S.W.3d at 926. Rather, the substance of the claim controls whether the Workers' Compensation Act provides the exclusive process and remedies and, thus, vests exclusive jurisdiction with the Division. The dispositive issue in this case is whether Sayaz's claims against Accident Fund-which are all premised on the existence of sham modified-duty offers-arise out of Accident Fund's investigation, handling, or settling of a claim for workers' compensation benefits. Id. at 925-26. We agree with Accident Fund that, necessarily, they do.
To advance the workers' compensation system's goal of returning injured employees to work as soon as is safe and appropriate, the Legislature enacted a process that encourages employers to offer injured employees "a bona fide position of employment that the employee is reasonably capable of performing, given the physical condition of the employee and the geographic accessibility of the position to the employee." TEX. LAB. CODE § 408.103(e) ; see id. §§ 402.021(a)(4), .021(b)(2), .021(d). As part of this process, either the employer or the carrier can request a work-status report from the treating physician by providing information about available modified-duty positions. 28 TEX. ADMIN. CODE § 129.6(a). The employer may then offer the employee a modified-duty position based on the employee's existing work abilities as determined by the treating physician. Id. § 129.6(b).
In addition to facilitating a speedy return to work, the bona-fide-employment-offer process is a benefits-determining mechanism. After a modified-duty job offer is made, the carrier may deem it bona fide based on a detailed set of criteria. Id. § 129.6(d)-(f). If the carrier deems the offer bona fide, it may then treat the offered wages as the employee's post-injury earnings, whether the employee accepts the offer or not. Id. §§ 129.2(c)(3), 129.6(g). This is significant because post-injury earnings are deducted from the employee's lost-wages benefits. Id. §§ 129.2(a), (b), (c)(3), 129.3(d). If a dispute concerning an offer of modified-duty employment arises, either the employee or the carrier may initiate the administrative dispute-resolution process, and the Division will determine if the offer is bona fide under the statutorily prescribed criteria. See id. § 129.6(h).
Though dissatisfied with the terms of the modified-duty job offers, Sayaz did not seek resolution through the workers' compensation administrative process. Rather, Sayaz sued Coil Tubing and Accident Fund, characterizing the job offers as "bogus" because they "were extended during times that Sayaz was not permitted to work" and the short response deadline given was "arbitrary." He claimed Coil Tubing *754 terminated him for failing to accept the job offers as pretext for workers' compensation retaliation and that Accident Fund "aided and abetted Coil Tubing in orchestrating a pretext for terminating" him by "direct[ing] Coil Tubing on how to create a pretext for the wrongful termination, and encourag[ing] Coil Tubing to proceed on arranging a pretext" for terminating him based on those job offers.
All the claims against Accident Fund derive from its participation in the bona-fide-job-offer process and Sayaz's dissatisfaction with those offers. The statutory scheme specifically addresses job-offer timing and conformity with medical restrictions from multiple doctors. See 28 TEX. ADMIN. CODE § 129.6(b), (d)(2), (f), (g). Whether these offers were "bona fide" is the threshold factual determination for each of his claims against Accident Fund, which means the trial court is being tasked with making a determination about a matter committed to the Division's exclusive jurisdiction. See id. § 129.6(h). We thus conclude that Sayaz's claims against Accident Fund arise out of the statutory claims-handling process and, as a result, "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrate[s] legislative intent for there to be no alternative remedies." Ruttiger , 381 S.W.3d at 444 ; see In re Liberty Mut. Fire Ins. Co. , 295 S.W.3d 327, 328-29 (Tex. 2009) (orig. proceeding) (because the Division has exclusive jurisdiction to determine entitlement to medical benefits and the plaintiff's claim depends on whether he was entitled to further medical care, the issue must first be addressed administratively); Am. Motorists Ins. Co. v. Fodge , 63 S.W.3d 801, 804 (Tex. 2001) (to avoid "circumvent[ing] the Commission's exclusive authority," courts cannot award compensation benefits or damages for their denial "without a determination by the Commission that such benefits were due"); see also TEX. LAB. CODE § 410.251 ("A party that has exhausted its administrative remedies under this subtitle and that is aggrieved by a final decision of the appeals panel may seek judicial review....").
Sayaz argues Accident Fund had no statutory role in the bona-fide-job-offer process in the context of the claims alleged here because Coil Tubing made the offers and then fired him before Accident Fund could make a determination concerning benefits and the offers' validity. We disagree. Accident Fund's role in the claims-handling process began as soon as the claim was made. See Ruttiger , 381 S.W.3d at 441. Accident Fund worked with Coil Tubing in sharing medical information and preparing the job-offer letters, and this interaction forms the basis of Sayaz's claims against Accident Fund.
Workers' compensation carriers play an integral role in the statutory bona-fide-employment-offer process. See 28 TEX. ADMIN. CODE §§ 129.6(a), (d), (h). The Division is charged with ensuring all system participants, including carriers, comply with the rules, and when participants abuse the process, administrative penalties are available. See TEX. LAB. CODE §§ 402.00114(a), 414.002(a)(3), 415.008 ; see also Ruttiger , 381 S.W.3d at 443. Thus, even though the employer may be the one to make a modified-duty job offer, the carrier's role is vital to the statutory scheme. The Division is charged with monitoring the process and redressing abuse, which is what Sayaz alleges here.
Because the Division has exclusive jurisdiction over Sayaz's claims against Accident Fund and Sayaz did not exhaust administrative remedies through the workers' compensation system before filing suit, allowing those claims to proceed in the trial court would disrupt the orderly *755 process of government. Thus, mandamus relief for Accident Fund is appropriate. Crawford , 458 S.W.3d at 928-29 ; Entergy , 142 S.W.3d at 321.
Pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral argument, we conditionally grant mandamus relief to Accident Fund General Insurance Company and Kriste Henderson and direct the 430th District Court to withdraw its orders denying their plea to the jurisdiction and dismiss all claims against them for lack of subject-matter jurisdiction. Our writ will issue only if the court fails to act in accordance with this opinion. We deny mandamus relief to Coil Tubing Solutions, LLC.