# NO. 12-19-00144-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:  OLD REPUBLIC RISK MANAGEMENT, OLD REPUBLIC INSURANCE COMPANY,* | *§* | |
| *THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C., TIMOTHY K. SINGLEY AND DANA M. GANNON,* | *§* | *ORIGINAL PROCEEDING* |
| *RELATORS* | *§* | |

## *MEMORANDUM OPINION*

Relators, Old Republic Risk Management, Old Republic Insurance Company, Thornton, Biechlin, Reynolds, and Guerra, L.C., Timothy K. Singley, and Dana M. Gannon, filed this original proceeding to challenge Respondent's denial of their plea to the jurisdiction and motion to dismiss.[1]  We conditionally grant the writ.

## BACKGROUND

On January 22, 2018, Debra Morris, Individually and as representative of the Estate of Kenneth W. Morris, Ashley Bialowas f/k/a Ashley Morris, Amanda Morris Wright, Jimmy Williams, Rebecca Williams, Orlando Ordaz, and Roy McCollough, the Real Parties in Interest (RPIs), sued Relators for fraudulent lien, declaratory judgment, insurance code violations, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien. According to the petition, a fire and explosion occurred at the Georgia-Pacific plywood mill in Corrigan, Texas on April 26, 2014.  The explosion injured several employees and resulted in at least one fatality.  Old Republic provided workers' compensation insurance coverage to Georgia-Pacific and paid benefits to the RPIs.  The RPIs also filed a personal injury lawsuit against certain third parties.  In their petition against Old Republic, the RPIs alleged that Old Republic sent written

---

[1] Respondent is the Honorable Paul E. White, Judge of the 159th District Court in Angelina County, Texas.

notice claiming a lien against the third-party claims based on medical, and wage benefits paid by Old Republic and related to the RPIs' injuries. The RPIs settled with two of the third parties and proceeded to a jury trial in federal court as to the remaining third parties. The federal court denied Old Republic's motion to intervene.

On September 28, 2018, Relators filed a plea to the jurisdiction and motion to dismiss the RPIs' lawsuit against them for lack of subject matter jurisdiction. They alleged that the RPIs' claims arose from Old Republic's investigation, handling, or settlement of workers' compensation benefits, and they had not exhausted their administrative remedies under the Texas Workers Compensation Act (the Act). According to Relators, the Division of Workers Compensation (DWC) maintained exclusive jurisdiction to hear claims alleged in the RPIs' lawsuit. Relators sought dismissal of the RPIs' claims for fraudulent lien, violations of insurance code Section 541.061, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien, leaving only the declaratory judgment claim.

In a letter to the parties, Respondent denied the plea to the jurisdiction and motion to dismiss. Respondent's letter states, in pertinent part, as follows:

> At the time of the motion hearing on February 25th, I announced an inclination to deny the Plea and Motion in the absence of: 1) case authority dealing solely with a subrogation lien dispute without suspension of [workers' compensation] benefits; 2) a specific administrative violation as to subrogation liens in Chapter 415; or 3) [an] agency ruling /appeals decision pertaining to subrogation liens pursuant to Chapter 415. Having found none, I make this ruling although I would not be surprised if appellate courts differ with my decision on the basis of an intended "pervasive regulatory scheme" of the Labor Code for disposition by the [DWC] on everything workers' compensation related.

On March 18, Respondent signed an order denying the plea to the jurisdiction and motion to dismiss. This proceeding followed.

### PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). To prevent disruption of the orderly processes of

2

government, the denial of a plea to the jurisdiction for failure to exhaust administrative remedies is reviewable by mandamus. *See In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex. 2009) (per curiam, orig. proceeding); *see also In re Tex. Mut. Ins. Co.*, 360 S.W.3d 588, 592 (Tex. App.—Austin 2011, orig. proceeding).

<u>**ABUSE OF DISCRETION**</u>

Relators contend that Respondent abused his discretion by denying their plea to the jurisdiction and motion to dismiss because the RPIs' claims are within the DWC's exclusive jurisdiction and the RPIs failed to exhaust their administrative remedies.

**<u>Standard of Review and Applicable Law</u>**

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Cerberus Capital*, 164 S.W.3d at 382. This standard has different applications in different circumstances. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). When reviewing the trial court's resolution of factual issues or matters committed to its discretion, we may not substitute our judgment for that of the trial court. *Id*. The relator must show that the trial court could reasonably have reached only one conclusion. *Id*. at 840. Our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* This is because a trial court has no discretion in determining what the law is or applying the law to the facts. *Id*.

Courts of general jurisdiction are presumed to have subject matter jurisdiction absent a contrary showing that the Texas Constitution or other law confers jurisdiction on another court, tribunal, or administrative body. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002); *see also* TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. §§ 24.007–.008 (West 2004 and West Supp. 2016). Administrative bodies may exercise only those powers the law confers upon them in clear and express language. *Subaru of Am., Inc.*, 84 S.W.3d at 220. Courts will not imply the existence of additional authority for administrative bodies, nor may these bodies create for themselves any excess powers. *Id*. In deciding whether an administrative body has exclusive jurisdiction, we look to its authorizing legislation for an express grant of exclusive jurisdiction, or for a "pervasive regulatory scheme" indicating an intent to confer exclusive jurisdiction. *Emps. Ret. Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 908-09 (Tex. 2009). Ordinarily,

3

if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of an agency's action. ***Subaru of Am., Inc.***, 84 S.W.3d at 221. "Until then the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction." ***Id***. Whether an agency has exclusive jurisdiction is a matter of law that we review de novo. ***Id.*** at 222.

"Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX. LAB CODE ANN. § 408.001(a) (West 2015). With an exception inapplicable here, the Texas Department of Insurance oversees the workers' compensation system. ***Id***. § 402.001(a) (West 2015). The DWC is established as a division within the Department of Insurance to administer and operate the workers' compensation system. ***Id***. § 402.001(b). The DWC shall: (1) regulate and administer the business of workers' compensation; and (2) ensure that the Act and other laws regarding workers' compensation are executed. ***Id***. § 402.00114(a) (West 2015). The DWC monitors (1) persons claiming benefits; (2) employers; (3) insurance carriers; (4) attorneys and other representatives of parties; and (5) health care providers for compliance with commissioner rules, the Act, and other workers' compensation laws. ***Id***. § 414.002(a) (West 2006). The Act vests the power to award compensation benefits solely in the DWC, subject to judicial review. *See **Am. Motorists Ins. Co. v. Fodge***, 63 S.W.3d 801, 803 (Tex. 2001).

The DWC is "charged with ensuring all system participants, including carriers, comply with the rules, and when participants abuse the process, administrative penalties are available." ***In re Accident Fund Gen. Ins. Co.***, 543 S.W.3d 750, 754 (Tex. 2017) (per curiam, orig. proceeding); *see **In re Crawford & Co.***, 458 S.W.3d 920, 927 (Tex. 2015) (per curiam, orig. proceeding) (the Act's "comprehensive system for resolving workers' compensation claims encompasses prohibitions against fraud and misrepresentations made within the claims-settlement context, and grants the [DWC] authority to regulate and sanction any such conduct"); *see also **Tex. Mut. Ins. Co. v. Ruttiger***, 381 S.W.3d 430, 443 (Tex. 2012). The Act identifies numerous specific administrative violations, including the failure to comply with the Act's provisions. *See* TEX. LAB. CODE ANN. § 415.002(a) (West 2006); *see also id*. § 415.021(a) (West 2015); *id.* § 415.0035 (West 2015). The DWC may impose an array of sanctions against those who fail to comply, including a cease-and-desist order and administrative penalties. ***Crawford***, 458 S.W.3d at 923.

4

The Act provides a dispute resolution process consisting of four possible steps: a benefit review conference (BRC), a contested case hearing (CCH), review by an administrative appeals panel, and judicial review. *Ruttiger*, 381 S.W.3d at 437. A claimant need not continue through every step, as the Act contemplates that disputes may be resolved at any level. *Id*. Proceedings at the administrative agency level reduce the number and cost of judicial trials, speed up the time for the entire dispute resolution process, and facilitate interlocutory payment of benefits pending final resolution of disputes. *Id*. at 440. A party who exhausts its administrative remedies under the Act and is aggrieved by a final decision of the appeals panel may seek judicial review. TEX. LAB. CODE ANN. § 410.251 (West 2015). Judicial review of a final decision of the appeals panel regarding compensability or eligibility for or the amount of income or death benefits shall be conducted as provided by the Act's subchapter addressing judicial review of issues regarding compensability, income, or death benefits. *Id*. § 410.301(a) (West 2015).

For claims arising out of the claims-settlement process, the Act with its definitions, detailed procedures, and dispute resolution process demonstrates legislative intent for there to be no alternative remedies. *Ruttiger*, 381 S.W.3d at 444; *see Crawford*, 458 S.W.3d at 925. "[A]llowing parties to pursue remedies that circumvent the [DWC's] exclusive jurisdiction would undermine the workers' compensation system's careful benefits-determination and claims-resolution processes." *Accident Fund*, 543 S.W.3d at 753. However, the Act does not bar every statutory and common law claim that can be asserted against a workers' compensation carrier. *Crawford*, 458 S.W.3d at 924; *see Accident Fund*, 543 S.W.3d at 753. Rather, the Act provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier improperly investigated, handled, or settled a claim for benefits. *Crawford*, 458 S.W.3d at 923-24. Whether the Act provides the exclusive process and remedies depends on the claim's substance, not the label of the cause of action asserted. *Id*. at 926.

**Causes of Action**

The RPIs asserted claims for fraudulent lien, insurance code violations, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien.[2] Specifically, the RPIs alleged that Singley, Gannon, and the Firm (1) participated in a fraudulent business scheme by

---

[2] The RPIs' declaratory judgment claim is not before us, as Old Republic's plea to the jurisdiction did not seek dismissal of that claim.

conspiring with their clients to assert and collect a fraudulent lien, violate the insurance code, and earn an inflated fee; (2) knowingly drafted, filed, and presented false and fraudulent legal documents in a federal court proceeding; and (3) knew the lien was fraudulent at the time they file a plea in intervention on behalf of their clients. They alleged that this scheme was designed to fraudulently transfer administrative costs of workers' compensation claims from Old Republic to the RPIs and fraudulently inflate the true cost of medical benefits that Old Republic paid on behalf of Jimmy Williams for the sole purpose of asserting a fraudulently inflated lien. According to the RPIs, Singley, Gannon, and the Firm knew the following:

> a. the lien claim was inflated by administrative costs,
> b. the lien claim was fraudulently inflated by contract payments initially made to Paradigm Management[3] as "medical payments" purportedly made for the benefit of Jimmy Williams despite knowing that such payments were not medical payments but contractual payments for case management, and
> c. a significant amount of the contractual payments to Paradigm had been repaid to the Old Republic Defendants prior to the assertion of the lien.

The RPIs also alleged that: (1) Old Republic violated Section 541.061 of the insurance code "by representing the workers' compensation policy paid or assumed benefits that it did not pay or assume and attempting to assert a lien for benefits that were not paid or assumed to the employee or legal beneficiary," and (2) Singley and Old Republic engaged in gamesmanship and intentionally ignored the RPIs' "requests for information regarding the alleged lien in hopes that the RPIs would settle all third-party claims [and dismiss the underlying lawsuit] without obtaining a jury finding on the percentage of fault attributable to the employer." The RPIs identify the following as fraudulent:

> a. Pretrial false representations to Plaintiffs' counsel that the "medical paid on Jimmy Williams was $5.5 million."
> b. Sworn lien affidavits … asserting, remarkably and untruthfully, a medical lien against Jimmy Williams in excess of $5 million.
> c. Sworn lien affidavits … asserting liens against the claims of the Williams and Morris Plaintiffs that fraudulently included administrative costs.
> d. Submitting a written spreadsheet to Plaintiffs' counsel outlining some medical payments mixed in with an enormous payment directly to Paradigm, the third-party administrator — all represented, untruthfully, as medical payments.

---

[3] According to the RPIs' petition, Paradigm is a third-party administrator.

6

In alleging their claim of fraudulent lien, the RPIs stated that Old Republic's untimely attempt to intervene in the underlying case was fraudulent because Old Republic attached an affidavit claiming a lien in the amount of $5,587,479.18 in medical bills as to Jimmy Williams, but money paid to Williams's medical providers was less than half that amount. They alleged that the summary of charges attached to the affidavit included hundreds of charges for bill and utilization review that are not recoverable under the workers' compensation act, as well as $5,354,500 in payments to Paradigm. According to the RPIs, despite multiple requests, Old Republic "provided no explanation for its attempt to assert a medical bills workers compensation lien for more than twice the monies actually paid to medical providers (other than attorney Singley's vague suggestion that the difference was due to *increased costs* associated with the third-party administrator)." They alleged that these types of costs are not included in a worker's compensation lien because the labor code limits the lien to amounts paid or assumed to the employee or legal beneficiary. They further alleged that Old Republic fraudulently asserted the contractual payments to Paradigm as medical benefits to Williams, despite knowing the following:

a. the contractual payments were *not* "medical benefits,"
b. the amounts asserted were never legally incurred, *and*
c. the Old Republic Defendants had been refunded millions of dollars under the contract prior to  the fraudulent assertion of the lien.

The RPIs further alleged that Relators conspired to unlawfully assert a fraudulent lien as part of a scheme to defraud the RPIs out of millions of dollars, and committed unlawful overt acts by swearing to, drafting, and presenting fraudulent lien claims.

**Analysis**

Relators contend that (1) a subrogation right arises from the underlying benefits paid or assumed by the carrier and is based on the carrier's investigation, handling, or settling of the benefit claims; (2) allegations that Old Republic sought to shift administrative costs to the RPIs involves the determination of the amount of benefits to which a lien may properly attach; (3) the RPIs' claims involve the compensability or eligibility for, or the mount of, income or death benefits and arise out of the claims settlement process; (4) whether administrative costs qualify as compensable benefits and are included in the amount of benefits paid is a challenge to the amount of income or death benefits for which judicial review is available only after a final decision of the appeals panel; and (5) the Act "provides a 'pervasive regulatory scheme' that evidences legislative intent for [the]

7

DWC to have ***exclusive jurisdiction***" over the RPIs' claims. The RPIs respond that their claims arise from "Relators' repeated misconduct in improperly asserting inflated, unsupported, and previously stricken 'subrogation' claims against Real Parties in Interest's third-party recovery—inflated claims that have no basis in Texas workers' compensation law."[4] They maintain that this is a fraudulent lien case under the Texas Fraudulent Lien Statute and there can be no lien because the jury apportioned sixty-five percent liability to Georgia-Pacific in the federal lawsuit.[5]

Section 417.001 of the Act provides that an employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under the Act. TEX. LAB. CODE ANN. § 417.001(a) (West 2015). When a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or legal beneficiary. *Id*. § 417.001(b). "Texas's no-fault workers' compensation system permits the insurance carrier to recoup all benefits paid to an injured worker out of the 'first money' the worker recovers from a liable third party." ***Exxon Mobile Corp. v. Ins. Co. of Am.****,* 568 S.W.3d 650, 652 (Tex. 2019). "The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact" under Section 33.003 of the civil practice and remedies code, attributable to the employer. TEX. LAB. CODE ANN. § 417.001(b); *see* TEX. CIV. PRAC. & REM CODE § 33.003 (West 2015) (determination of percentage of responsibility). The net amount recovered by a claimant in a third-party action shall be used to reimburse the carrier for benefits, including medical benefits, that have been paid for the compensable injury. TEX. LAB. CODE ANN. § 417.002(a) (West 2015). The Act defines a "benefit" to include medical, income, death, or burial benefits based on a compensable injury. *Id*. § 401.011(5) (West 2015).

---

[4] The RPIs also point this Court to a lawsuit filed by Old Republic in an Angelina County district court for conversion of lien money against the RPIs' counsel and law firm. They ask, "How can these trial courts be 'abusing their discretion' for asserting jurisdiction over claims that Old Republic judicially admits should be brought there?" We need not decide whether Relators' lawsuit against the RPIs constitutes a judicial admission, because jurisdiction cannot be conferred by judicial admission, waiver, or estoppel. *See In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015) (orig. proceeding); *see also **In re Meekins***, 550 S.W.3d 729, 739 n. 4 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding).

[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 12.001-.007 (West 2017).

As set forth above, the substance of the RPIs' allegations demonstrates that their claims are founded on the contention that Old Republic's subrogation lien is fraudulent because it alleges a total amount that does not equate to the amount of benefits that were paid, including administrative costs, and its attorneys participated in such scheme. However, the Act expressly provides that an insurance carrier or its representative commits an administrative violation by failing to comply with a provision of the Act. *See id*. § 415.002(a)(22) (West 2015); *see id*. § 401.011(2) (an administrative violation includes a violation of the Act that is "subject to penalties and sanctions as provided by" the Act). The RPIs' allegations, if true, demonstrate a failure to comply with Chapter 417 of the Act with respect to an attempt to recover for monies, particularly administrative costs and inflated medical benefits, that do not qualify as "benefits" as defined by the Act.[6] Such noncompliance would constitute an administrative violation. It is the DWC's responsibility to ensure that the Act is executed and to monitor insurance carriers, attorneys, and representatives of parties for compliance with the Act. *Id*. §§ 402.00114(a); 414.002(a); *see Accident Fund*, 543 S.W.3d at 754. When participants, including carriers, abuse the process (as the RPIs' allege), administrative penalties are available. *Accident Fund*, 543 S.W.3d at 754. The Act has "multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements." *Ruttiger*, 381 S.W.3d at 443.

Because the Act specifically provides that the net amount recovered by the claimant in a third-party action shall be used to reimburse the carrier for *benefits*, which includes only medical, income, death, or burial benefits, paid for the compensable injury, a carrier violates the Act's provisions if it seeks subrogation for amounts that do not qualify as benefits. It is axiomatic that the DWC, tasked with regulating and administering the business of workers' compensation and monitoring insurance carriers, attorneys, and other representatives for compliance with the Act, should be the decision maker with regard to whether benefits have been inflated and administrative costs have been wrongfully included in a subrogation claim. *See* TEX. LAB. CODE ANN.

---

[6] In their reply to the RPIs' response, Relators state, "Finally, and as Claimants and their counsel are aware but omitted to mention in their response, the medical expense figure of $5.5 million attributable to Claimant Jimmy Williams was part of that Claimant's DWC oversight, as to which DWC determined the appropriate amount (a determination which Mr. Williams did not challenge in a subsequent trial *de novo*). If, as and to the extent he is able to urge that that figure should not be considered binding for purposes of the scope of ORIC's subrogation interest, it makes little sense to suggest that DWC is somehow without the 'framework' to revisit an issue which, unquestionably, when it is charged with oversight and review of medical costs in a workers compensation claim, and ensure the Texas Medical Fee Guidelines are adhered to." Relators do not cite to a location in the record to support this statement and this Court's review of the record has revealed none.

9

§§ 414.002(a), 402.00114(a).  *See also **Subaru of Am., Inc**.*, 84 S.W.3d at 221 (courts should allow administrative agency to initially decide issue when agency is typically staffed with experts trained in handling complex problems in agency's purview).  Accordingly, the RPIs' claims for fraudulent lien, insurance code violations, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien arise out of Old Republic's allegedly improper investigation, handling, or settling of a claim for worker's compensation benefits.  *See **Accident Fund***, 543 S.W.3d at 753; *see also **Crawford***, 458 S.W.3d at 923-24.  For this reason, the DWC has exclusive jurisdiction over the claims and the RPIs were required to exhaust their administrative remedies with the DWC before seeking judicial review.  Consequently, Respondent abused his discretion by denying Relators' plea to the jurisdiction as to all claims other than the RPIs' declaratory judgment claim.

## CONCLUSION

Having determined that Respondent abused his discretion, we ***conditionally grant*** Relators' petition for writ of mandamus. We direct Respondent to vacate his March 18, 2019, order denying Relators' plea to the jurisdiction, and in its stead, to issue an order (1) granting the plea to the jurisdiction with respect to the RPIs' claims for fraudulent lien, insurance code violations, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien; and (2) abating the trial court proceeding pending the DWC's resolution of whether Old Republic is entitled to seek administrative costs as part of its subrogation claim and whether the amount of benefits paid has been wrongfully inflated. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

**BRIAN HOYLE**
Justice

Opinion delivered June 12, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 12, 2019

NO. 12-19-00144-CV

**OLD REPUBLIC RISK MANAGEMENT, OLD REPUBLIC INSURANCE COMPANY, THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C., TIMOTHY K. SINGLEY AND DANA M. GANNON,**
Relators
V.

**HON. PAUL E. WHITE,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Old Republic Risk Management, Old Republic Insurance Company, Thornton, Biechlin, Reynolds & Guerra, L.C., Timothy K. Singley and Dana M. Gannon; who are the relators in appellate cause number 12-19-00144-CV and defendants in cause number CV-00050-18-1, pending on the docket of the 159th Judicial District Court of Angelina County, Texas. Said petition for writ of mandamus having been filed herein on April 16, 2019, and the same having been duly considered, because it

11

is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of March 18, 2019, denying Relators' plea to the jurisdiction, and in its stead, to issue an order (1) granting the plea to the jurisdiction with respect to the Real Parties in Interest's claims for fraudulent lien, insurance code violations, fraud, independent fraudulent acts by lawyer/law firm, and conspiracy to assert fraudulent lien; and (2) abating the trial court proceeding pending the DWC's resolution of whether Old Republic is entitled to seek administrative costs as part of its subrogation claim and whether the amount of benefits paid has been wrongfully inflated; the writ will not issue unless the **HONORABLE PAUL E. WHITE** fails to comply with this Court's order within ten (10) days from the date of this order.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*