# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00517-CV

---

**Z Bar A Ranch, LP, Appellant**

**v.**

**Tax Appraisal District of Bell County, Appellee**

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY**
**NO. 284,660-C, THE HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Z Bar A Ranch, LP (Z Bar) appeals the district court's final take nothing judgment following a bench trial on Z Bar's claim that the Tax Appraisal District of Bell County (the Appraisal District) did not deliver notice that it denied Z Bar's application for appraisal of its property as open-space land for tax year 2015. *See generally* Tex. Const. art. VIII, § 1-d-1(a) (requiring legislature to provide by general law for taxation of open-space land on basis of productive capacity); Tex. Tax Code §§ 23.51–.60 (Appraisal of Agricultural Land); *see also* Tex. Tax Code §§ 23.51(1) (defining "[q]ualified open-space land"), .57(d) (requiring notice of denial of application for open-space appraisal). The Appraisal District responds that Z Bar failed to exhaust its administrative remedies by not raising before the Appraisal Review Board (the ARB) its claim regarding any alleged failure by the Appraisal District to provide notice of the denial of Z Bar's open-space appraisal application; instead, Z Bar only raised a claim for failure

to provide notice of appraised value, which is no longer at issue in the case. *See* Tex. Tax Code § 41.411 (providing for protest before ARB for chief appraiser's failure to provide notice to which property owner is entitled); *compare id.* § 25.19 (requiring notice of appraised value), *with id.* § 23.57(d) (requiring notice of denial of application for open-space appraisal). Because we agree with the Appraisal District, we vacate the judgment and dismiss for lack of jurisdiction.

## BACKGROUND

Z Bar, a limited partnership, consists of two partners: Don and Karen Holloway.[1] Z Bar purchased the property at issue (the Property) in two separate transactions: Z Bar acquired 700 acres in June 2014 and an additional 161 acres in October 2014. Prior to the sale, the Property was appraised as open-space land and maintained that assessment through tax year 2014.[2] Both Karen and Don testified that they expected the Property would continue to enjoy open-space appraisal for tax year 2015. However, once the Property changed ownership, the new property owner was required to timely apply for open-space appraisal. *See* Tex. Tax Code § 23.54(e) (providing for continued open-space appraisal "without a new application unless the

---

[1] For convenience, we will refer to the Holloways by their first names. At trial, Karen explained that the Holloways "manage a series of real estate investments and holding companies" and that through these companies, including Z Bar, they own over 100 properties.

[2] "The open-space land valuation allows property used for farm or ranch purposes to be valued based upon the property's productive capacity rather than its market value" and a property qualifies for the valuation if "1) it is currently being devoted principally to 'agricultural use' to the degree of intensity generally accepted in the area, and 2) the property has been devoted principally to 'agricultural use' or to production of timber or forests for five of the preceding seven years." *Parker Cty. Appraisal Dist. v. Francis*, 436 S.W.3d 845, 849 (Tex. App.—Fort Worth 2014, no pet.) (citing Tex. Tax Code § 23.51(1); *HL Farm Corp. v. Self*, 877 S.W.2d 288, 292 (Tex. 1994)).

ownership of the land changes").[3]  "If a person fails to file a valid application on time, the land is ineligible for appraisal as provided by this subchapter for that year."  *Id.*  In October 2015, the Holloways received Z Bar's tax year 2015 bill, which did not include the open-space appraisal of the Property, for around $51,000.  According to Karen, if the open-space appraisal value had been applied, taxes on the Property would have been approximately $1,300.

That same month, the Holloways prepared and signed a notice of protest form on behalf of Z Bar for the Property.[4]  Three boxes were checked under the "Check reasons for your protest" section:  (1) "Failure to send required notice" with "Notice of Appraised Value" written in the blank for "type"; (2) "Exemption was denied, modified or cancelled"; and (3) "Ag-use, open-space or other special appraisal was denied, modified or cancelled."  Additionally, under the section, "Give facts that may help resolve your case," the following two statements were typed:  (1) "Per Subchapter C.  Taxpayer protests under Glenn Hegar, Texas Comptroller of Public Accounts, Section 41.411 Protest of Failure to Give Notice of Property Valuation and/or Change in Agriculture Status from Bell County Appraisal District"; and (2) "We never received Notice of Appraised Value for 2015 Tax Year."

In December 2015, Z Bar hired KE Andrews as a tax consultant to handle the matter.  At the end of December, KE Andrews submitted another notice of protest on behalf of

---

[3]  Applications are generally due on May 1.  *See* Tex. Tax Code § 23.54(d).  But late applications may be filed before the ARB approves the appraisal records, which must occur by July 20.  *See id.* §§ 23.541(a) (permitting late application if filed before ARB's approval of appraisal records); 23.57(c) (providing that chief appraiser shall determine validity of appraisal applications before submitting appraisal records for review); 41.12(a) (requiring ARB to approve records by July 20).

[4]  At trial, Karen testified that the Holloways filed "[a]pproximately 46 to 50" protests in various appraisal districts across the state of Texas for the tax year at the time of the hearing and that she has "some familiarity with the appraisal district process in the state of Texas."

Z Bar for the Property. Once again, three boxes were checked under the "Check Reasons for Your Protest"[5]: (1) "Failure to send required notice" with the "type" blank left empty; (2) "Ag-use, open-space or other special appraisal was denied, modified or cancelled"; and (3) "Other" with "25.25(c)" listed in the blank.[6] Under the "Give Facts That May Help Resolve Your Case" section, the notice included the following typed statement: "Owner states they did not receive notice that the agriculture status was being canceled, and did not receive any appraisal notices."

A hearing before the ARB was set for February 25, 2016. The hearing notice listed that "[t]his particular hearing will consider the issues you raised concerning: 2015" "FAILURE TO SEND REQUIRED NOTICE"; "OTHER"; and "AG-USE, OPEN-SPACE OR OTHER SPECIAL APPRAISAL WAS DENIED, MODIFIED OR CANCELLED." The hearing notice also stated that all taxes must be paid on the undisputed amount on or before January 31, 2016. On January 20, Karen sent a certified letter with an enclosed check for the undisputed amount for the tax payment with an open-space land valuation. The letter also requested, "Please send us confirmation of our protest and the date and time for our ARB meeting disputing our loss of AG use."

On February 25, the Holloways and Z Bar's counsel attended the ARB hearing. At the hearing, counsel introduced Z Bar's protest as follows:

> The Holloways bought this property [in June and in October 2014]. . . . When they -- when they did the closing on these properties -- traditionally when they -- when they buy a ranch property, the closing will include the -- the ag renewal [i.e., open-space appraisal application form]. For whatever reason, come to find out in this closing, the ag renewal wasn't included in those closing documents.

---

[5] The notice of protest form utilized by KE Andrews was a new notice of protest form, which is why the section headings are capitalized differently.

[6] At the ARB hearing, Z Bar withdrew its protest regarding section 25.25.

4

The Holloways paid the 2014 taxes in February of '15. They paid the ag values. And at that point in time had not received any -- any notice or understanding that there had been a change to that ag value for those properties. The next . . . notice that -- that the Holloways actually received was in October of '15, and that was that, "Hey, here's the new -- the new values with all of the ag exemptions removed." At that point in time, Mr. Holloway contacted the Tax Appraisal District here, and we began kind of unpacking what the Tax Appraisal District has in their records that they had sent versus what the Holloways had in fact actually received.

Z Bar's counsel then explained that the Appraisal District's records showed "that an ag-exemption [form] application was mailed in February of '15" and asked Don if he received it, to which he responded "No." Don did testify that he received "an ag-exemption application" by email in October 2015, at which point he contacted the Appraisal District. Don and Karen then testified about how they never received any notice of appraised value that the Property would not have the open-space appraisal for tax year 2015 until receiving the 2015 tax bill in October.

After the Holloways concluded their testimony, Roger Chesser, the Appraisal District's deputy chief appraiser, testified regarding the Appraisal District's process. He explained that the computer system "look[s] at property that had ag [open-space appraisal] last year." Then, "as a courtesy," the Appraisal District tries to send out a form application to the owners of a "property that had ag last year" but no longer have it "[b]ecause some people don't know that they have to apply for ag" when "the agricultural has dropped off because of a new owner" and "the new owners have to apply, and they have to apply timely for it to be applied." He further explained, "We have [Z Bar's open-space application for the Property] for '16, apparently. But we don't have one for '15. So there's not even been an application filed yet for

2015."[7] Summing up, Chesser stated, "[W]e aren't required to send them a[n] . . . application for ag," but "if they had applied for ag and we had granted it and we did remove it, then we're required to send it to 'em. But they never had it, so we weren't required to send."

In an exchange between Chesser and Karen at the ARB hearing, Karen responded that "for 2014, Z Bar . . . was billed for ag." Chesser replied that because "you bought it during the year," it was billed "[b]ased on the previous owner's ag application." Karen answered, "Got it." Karen continued to ask questions, saying, "I'm just trying to understand this, if you don't mind," and Chesser replied that "[t]he property was in an ag- -- agricultural special valuation because the application of the previous owner" and that "[w]e don't have a copy of a -- or a received application for 2015 ag because you never submitted one. Not even yet today we don't have one for '15." Chesser also stated: "I'm not sayin' that we've established that we didn't send the things. I feel very comfortable that we did. But even if that was established, that doesn't provide the remedy for the application for agriculture in 2015. And we still don't have an application."

Later at the hearing, Don responded to Chesser that "[m]aybe I can blame it on the U.S. Postal Service" and "[w]ho's to say we didn't send in the ag [application] and [indiscernible] you didn't receive that, either?" Chesser asked, "Did you?" Don responded, "No, we didn't." Summing up, Chesser stated, "if [the Holloways had] come before the Board and said we had denied [the appraisal application], and we sent them a letter saying, 'Hey, you applied and we denied it,' then they get to come [indiscernible] here and say, 'Hey, we think we should have had it,'" but "[t]hey've never been denied agriculture. We've never denied it

_____

[7] It is undisputed that the Property has been appraised as open-space land for tax years 2014, 2016, and 2017; tax year 2015 is the only tax year at issue.

6

because it's never been applied for." Neither Z Bar's counsel nor the Holloways disputed this account at the ARB hearing.

At the close of the hearing, one ARB member proposed a motion that the value of the Property not be appraised as open-space land for tax year 2015, stating, "I would like to give you relief . . . but the law of the State of Texas very hard to pass [sic] without that deadline on the 18th of July. Simply put, that deadline wasn't met, for whatever reason." The motion carried with two ARB members in favor and one opposed.

Immediately following the hearing, the Holloways submitted an application for Z Bar for the Property to be valued as open-space land for tax year 2015. But on March 3, the Appraisal District sent a letter to the Holloways stating that it "is unable to consider your application" because it "was filed after the state mandated deadline and the issue of late application was determined during a hearing of the [ARB] prior to the receipt of the application." Also in March, the ARB issued its order determining protest, in which it determined that "[t]he appraisal records are correct and should not be changed" based on the protest concerning "the following action(s) . . . Q04 (Failure to send required notice) Q05 (Other) Q08 (Ag-use, open-space or other special appraisal was denied, modified or cancelled)."

On April 22, Z Bar sued the Appraisal District in district court. *See* Tex. Tax Code § 42.01(a)(1)(A) (providing property owner with right to appeal ARB order determining protest). Z Bar's original petition alleged four claims: denial of open-space valuation, failure to deliver notice, section 25.25(c)(3) clerical errors, and attorney's fees. In its live petition—the second amended petition—Z Bar limited its claims to assert that it "never received any notice that the Appraisal District rejected its application for special appraisal based on the Property's open-space use, or any notice of proposed value indicating that the Property would not be valued

7

based on open-space use." Z Bar alleged in its petition that "[a]fter acquiring the Property, [Z Bar] applied for special appraisal based on the Property's open-space use to continue the valuation designation already in place" but did not state when it applied. The Appraisal District filed a plea to the jurisdiction, claiming that Z Bar "failed to exhaust [its] administrative remedies" because it failed to protest "that the Appraisal District failed to give notice of denial of open-space application, per [section] 23.57" and instead "only protested the Appraisal District's alleged failure to send a *notice of appraised value*, per [section] 25.19." (Emphasis in original.) The district court did not expressly rule on the plea.

The district court conducted a review of the ARB's order by a bench trial de novo on February 5 and April 25, 2018. *See* Tex. Tax Code § 42.23(a) ("Review is by trial de novo."). Karen, Don, and Chesser testified. Although Z Bar did not present at the ARB hearing any evidence of having submitted an open-space appraisal application for tax year 2015, Karen testified at the bench trial that she had submitted applications for tax years 2014 and 2015 first on July 7, 2014, for the portion of the Property purchased in the first transaction and second on December 18, 2014, for the portion purchased in the second transaction. Copies of the applications were admitted as exhibits. Karen also testified that after receiving the tax year 2015 bill, she spoke with the Appraisal District's chief appraiser and told him that she had filed applications in 2014 but was told that there were no open-space appraisal applications on file. Don also testified that his wife did file open-space appraisal applications prior to May 1, 2015. When Don was asked at trial regarding his testimony at the ARB hearing that no application was filed, he stated that he "should have said, 'No, I didn't,' but I just said, 'No'"—implying that he meant to speak only for himself, not for Karen.

8

Chesser, on the other hand, testified that at the ARB hearing there was no argument made that an application had been presented and that Don expressly stated that Z Bar had not filed an application; that he discussed with representatives from KE Andrews that no application had been filed on Z Bar's behalf; that after the ARB hearing the Holloways asked him if they could fill out an application for tax year 2015, which Chesser said they could and gave them the forms but clarified that the Appraisal District would not be able to consider it because it was untimely; and that Don had reiterated to Chesser that he had thought an application had been filed by the title company, but the title company had said no. At the end of trial, the Appraisal District's counsel summarized its position as follows: "there is just no rationale to [Z Bar's] behavior other than the fact that no application was filed and that this whole suit is being brought under a story that is intended to secure the plaintiff a $40,000 refund"; "the Holloways received a tax bill for 2014 which had open-space appraisal, and they just assumed that it would roll over to 2015, without realizing that the taxpayer had to file an application, and that they were enjoying open space for 2014 under the prior owners' application"; and "our position is that [the application] was never received and that [the Holloways] indicated to the ARB, under oath, that no application had been filed and that it wasn't until after the suit was filed that an application was ever produced."

On May 9, 2018, the district court entered a take nothing judgment. After Z Bar requested findings of fact and conclusions of law, the district court found, among other things, that "[t]he evidence heard at trial did not support the claim that [Z Bar] filed an application for

open-space appraisal . . . for tax year 2015 prior to the deadline of July 18, 2015."[8] Z Bar timely appealed to this Court, raising two issues: the trial court erred in finding that the evidence at trial did not support the claim that Z Bar timely filed applications for open-space, and the trial court erred in finding that Z Bar could not establish that it was entitled to a notice of determination on its application for open-space appraisal. The Appraisal District responded, adding the additional issue for appeal that Z Bar did not "exhaust its administrative remedies on the sole claim it made at trial."

## DISCUSSION

Because the Appraisal District's jurisdictional challenge is a threshold issue, we address it first. Concluding that the jurisdictional issue is dispositive to this appeal, we do not address Z Bar's two issues presented. *See* Tex. R. App. P. 47.1.

**Standard of Review**

"When an agency has exclusive jurisdiction and the plaintiff has not exhausted administrative remedies, the trial court lacks subject-matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *In re Accident Fund Gen. Ins.*, 543 S.W.3d 750, 752 (Tex. 2017) (orig. proceeding) (per curiam) (citing *In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex. 2004) (orig. proceeding)). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "When a statute requires the exhaustion of administrative remedies before a plaintiff may file suit, the plaintiff bears the burden to show it has met the

---

   **8** At trial, Chesser testified that the tax year 2015 appraisal records were certified on July 17. *See* Tex. Tax Code §§ 23.541(a) (permitting late application if filed before ARB's approval of appraisal records), 41.12(a) (requiring ARB to approve records by July 20).

prerequisite to suit." *Rio Valley, LLC v. City of El Paso*, 441 S.W.3d 482, 487 (Tex. App.—El Paso 2014, no pet.) (collecting cases). In the procedural posture of this appeal from a final judgment, we consider the parties' evidence to the extent necessary to resolve challenged jurisdictional facts, taking as true all evidence favorable to the plaintiff and indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163, 169 (Tex. App.—Austin 2017, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

**Exhaustion of Administrative Remedies**

"The Texas Constitution expressly allows the Legislature to bestow exclusive original jurisdiction on administrative bodies." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) (citing Tex. Const. art. V, § 8). Here, "[t]here is no question the Legislature intended to do so" with respect to a protest brought under chapter 41 of the Texas Tax Code. *See id.* Chapter 41 details "exclusive" administrative procedures for those who would contest their property taxes. *See generally* Tex. Tax Code §§ 41.01–.71; *see also id.* § 42.09(a) (describing "procedures prescribed by this title for adjudication of the grounds of protest authorized by this title" as "exclusive"). Thus, exhaustion of administrative remedies is generally mandatory for tax protests under chapter 41, including for protests brought under section 41.411.[9] *See Rourk*, 194 S.W.3d at 502.

The exhaustion of administrative remedies doctrine "honors the Legislature's intent that 'the appropriate body adjudicates the dispute' first and thereby 'ensure[s] an orderly

---

[9] "[L]ong-recognized exceptions" to the exhaustion of administrative remedies doctrine exist but are not applicable here. *See Strayhorn v. Lexington Ins.*, 128 S.W.3d 772, 780 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006).

procedure to enforce those rights.'" *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016) (quoting *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam)); *see City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013)). We have noted two primary purposes for the doctrine:

> "First, exhaustion protects administrative agency authority" by giving an agency oversight over the programs it administers and discouraging "disregard of the agency's procedures." "Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation," and, in some cases, "claims are settled at the administrative level" or the agency proceedings will succeed in convincing the losing party not to pursue the matter in court.

*Lueck v. State*, 325 S.W.3d 752, 762 (Tex. App.—Austin 2010, pet. denied) (internal citations omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In other words, as the Texas Supreme Court explained:

> By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved. A party who obtains relief through the administrative process avoids the expense and delay of litigation. And if the outcome of the administrative process leaves the party dissatisfied, it may file suit and have the courts review the agency's decision.

*Marquez*, 487 S.W.3d at 544–45 (internal citations omitted)).

Here, if a party is dissatisfied with the ARB's decision after exhausting its administrative remedies, the party may file suit and the district court reviews the ARB's decision by trial de novo. *See* Tex. Tax Code § 42.23(a). "A trial de novo is '[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance'" and "is not confined to the same evidence that was presented during the administrative phase." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*,

12

555 S.W.3d 29, 50 (Tex. 2018) (quoting Trial de novo, *Black's Law Dictionary* (10th ed. 2014)). "Thus, in a trial de novo, a court may consider arguments and evidence that are introduced afresh." *Id.* But a trial de novo does not provide the plaintiff with the right to introduce new claims that were not raised and considered by the ARB; a plaintiff is still required to exhaust administrative remedies as to its claims before a trial de novo. *See id.* at 50–51 (noting that appraisal district could raise fraud issue because it "was raised only as an affirmative defense and not as a cause of action" and appraisal district did not "fail to exhaust its administrative remedies with regards to fraud" because there was "no need" for it "to pursue a remedy under" specific tax code provision).

At its trial de novo, Z Bar introduced evidence to support its new claim that it timely submitted an open-space appraisal application for the Property prior to the ARB hearing and that this predicate fact required that the Appraisal District provide notice of its denial of the application. *See* Tex. Tax Code § 23.57(d) (requiring notice of denial of application for open-space appraisal). Our jurisdictional analysis here does not address the validity of Z Bar's evidence. Rather, our analysis is limited to whether Z Bar exhausted its administrative remedies by raising this claim before the ARB.[10] And at the ARB hearing, Z Bar did not raise the claim that the Appraisal District was required to take certain actions *because* of the predicate fact of Z Bar's timely submitted application. Instead, Z Bar solely relied on the changed status of the Property from its 2014 tax bill to its 2015 tax bill to argue that the Appraisal District was required to send notice of either the change in status or the cancellation of the open-space

---

[10] For this reason, we do not consider as relevant to this jurisdictional inquiry the new evidence presented at the bench trial as to whether Z Bar had submitted an earlier application, except insofar as it goes to whether this claim was raised before the ARB.

appraisal—not that it was required to send notice of a denied application. *Compare id.* § 25.19(a), *with id.* § 23.57(d).

Moreover, the testimony before the ARB makes clear that Z Bar was not raising a claim that the Appraisal District failed to send required notice of a denied application.[11] When asked whether he had sent in an application, Don—one of Z Bar's two partners—expressly responded, "No, we didn't," and the Appraisal District provided further testimony through Chesser that Z Bar did not submit an application before the ARB hearing. At the ARB Hearing, Z Bar did not dispute the testimony from Don or Chesser that no application was filed. But at the trial de novo, Don tried to explain away his ARB hearing testimony by stating that he should have said, "No, I didn't" instead of just, "No." This clarification fails to account for his use of "we" in the statement, "No, *we* didn't." (Emphasis added.) We fail to see how Don's use of "we" could refer to anything other than both Karen and Don—the only two partners of Z Bar. Thus, at the hearing before the ARB, it was undisputed that Z Bar did not file a 2015 application, regardless of whether it was later disputed or if Don was mistaken in his testimony. Accordingly, Z Bar's alleged claim that the Appraisal District was required to send notice of its denial of Z Bar's 2015 application pursuant to section 23.57(d) of the Texas Tax Code was not

---

[11] Z Bar argues that "evidence, argument, or other testimony" offered at an ARB hearing is inadmissible and therefore should not be considered. *See* Tex. Tax Code § 42.23(b), (h). But when the Appraisal District offered the audio recording and transcript of the ARB hearing into evidence, Z Bar did not object to the audio recording. Z Bar objected to the transcript only as "not a complete transcript" because it says "not discernible" at multiple places but was overruled. Thus, the audio recording and transcript constitute admitted evidence in the record within the scope of our review, and any error as to the admission of the evidence is waived. *See, e.g.*, *Bay Area Healthcare Grp. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) ("Error is waived if the complaining party allows the evidence to be introduced without objection."); *see also* Tex. R. Evid. 103(a) (detailing requirements to preserve error on evidentiary rulings); Tex. R. App. P. 33.1 (detailing requirements to preserve appellate complaints).

14

before the ARB and therefore could not be raised for the first time on appeal to the district court. *See Sebastian Cotton & Grain*, 555 S.W.3d at 50–51.

Z Bar nevertheless argues that it satisfied the exhaustion of administrative remedies requirement by checking the box in its notice of protests that stated, "Ag-use, open-space or other special appraisal was denied, modified or canceled."  But notice of protests are insufficient in themselves to satisfy the exhaustion of administrative remedies requirement.[12]  *Cf. Unified Hous. of Parkside Crossing, LLC v. Appraisal Review Bd. of Williamson Cty.*, No. 03-09-00217-CV, 2010 WL 2133955, at *4 (Tex. App.—Austin May 22, 2010, no pet.) (mem. op.) (noting that "[f]iling '[t]he protest itself merely initiates the process while the affidavit or appearance provides the evidence on which the protest will be determined'" and that "'[i]f the taxpayer presents no evidence, the appraisal review board has nothing before it on which to make a determination, which is a prerequisite to judicial review'" (quoting *Webb Cty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 953 (Tex. 1990))).

Z Bar also argues that under *Cooke County Tax Appraisal District v. Teel*, 129 S.W.3d 724 (Tex. App.—Fort Worth 2004, no pet.), the ARB's order determining protest confers jurisdiction because the order stated that it considered and determined the merits of the issues raised in the notice of protest and provided that "the ARB has made a final decision on your protest. . . .  You have a right to appeal this order to the District Court."  In *Teel*, our sister court held that the Teels had exhausted their administrative remedies even though they "failed to timely apply for the favorable valuation and failed to timely protest their failure to receive the favorable valuation" when the ARB nevertheless conducted the protest hearing and entered an

---

[12]  For the same reason, we conclude that the ARB's hearing notices—which merely repeated the issues stated in the protest notices—did not establish exhaustion of administrative remedies.

15

order specifically finding that it had jurisdiction over the case. *Id.* at 728–29 (citing Tex. Tax Code § 42.01). But *Teel* does not stand for the proposition that a claim not raised to the ARB can be raised on appeal from the ARB's order. Thus, *Teel* does not control here.

Finally, Z Bar claims that applying the exhaustion of administrative remedies doctrine here would be to apply "the type of hypertechnical requirement that was rejected by the Legislature when it adopted the Tax Code." *See Midland Cent. Appraisal Dist. v. Plains Mktg., L.P.*, 202 S.W.3d 469, 475 (Tex. App.—Eastland 2006, pet. denied) ("Courts have recognized that the legislature rejected hypertechnical requirements for challenges to appraisal values when it adopted the current tax protest mechanism."). But it is not a "hypertechnical requirement" to require a taxpayer to raise its claim for protest before the ARB and not for the first time in a trial de novo, consistent with the exhaustion of administrative remedies doctrine. Rather, the doctrine promotes efficiency, encourages settlement at the administrative level, and potentially prevents the expenses and delays of litigation, while still providing for judicial review if a party is dissatisfied with the outcome of the administrative process as to that claim. *See Lueck*, 325 S.W.3d at 762; *see also Marquez*, 487 S.W.3d at 544–45. As the *Plains Marketing* court held, when the claim "was presented to, debated before, and denied by the [ARB]," then the plaintiff "exhausted its administrative remedies." 202 S.W.3d at 475. But unlike the *Plains Marketing* plaintiff, Z Bar did not exhaust its administrative remedies as to its claim that the Appraisal District was required to provide notice of its denial of Z Bar's alleged appraisal application that was timely filed. Therefore, the district court lacked subject matter jurisdiction over this claim.

**CONCLUSION**

For these reasons, we vacate the district court's take nothing judgment and dismiss Z Bar's claim for lack of subject matter jurisdiction. *See* Tex. R. App. P. 43.2(e); *see also In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 309 (Tex. 2010) (orig. proceeding) (holding that judgment is void if rendered by court without subject matter jurisdiction); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304, 307 (Tex. 2008) ("Without jurisdiction, the trial court should not render judgment that the plaintiffs take nothing; it should simply dismiss the case. . . . We do not render judgment that the plaintiffs take nothing, as we would if their claims failed on the merits; we dismiss the case for want of jurisdiction."); *McFadden v. Olesky*, 517 S.W.3d 287, 300 (Tex. App.—Austin 2017, pet. denied) (vacating trial court's final judgment following trial and dismissing claims for lack of subject matter jurisdiction).

 

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Vacated and Dismissed

Filed: April 22, 2020

17