# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 14-0256

═══════════════

IN RE CRAWFORD & COMPANY, CRAWFORD & COMPANY HEALTHCARE MANAGEMENT, INC., PATSY HOGAN AND OLD REPUBLIC INSURANCE COMPANY, RELATORS

═══════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════

**PER CURIAM**

Relators in this mandamus proceeding contend that the trial court abused its discretion when it refused to dismiss claims over which the Division of Workers' Compensation has exclusive jurisdiction. Because all of the claims arise out of relators' investigation, handling, and settling of claims for workers' compensation benefits, we agree.

In 1998, Glenn Johnson suffered traumatic and debilitating injuries while working for ASARCO. The parties do not dispute that Johnson was severely injured or that he is entitled to receive lifetime workers' compensation benefits. Disputes over the details and amounts of those benefits, however, led Johnson to request a benefit review conference in 2008, which led to a contested case hearing the following year. It appears from the parties' briefs that the suit for judicial review of that decision remains pending in the district court.

Meanwhile, separate from the administrative proceedings, Johnson and his wife, Natalie, filed the underlying suit against ASARCO's workers' compensation insurance provider Old Republic Insurance Company; its claims services contractors Crawford & Company and Crawford & Company Healthcare Management, Inc.; and their employee Patsy Hogan (collectively,

Crawford). The Johnsons allege that, over a period of nearly ten years, Crawford engaged in "a battle plan to delay, discourage and deny" benefits that the Johnsons were entitled to receive. Specifically, the Johnsons contend that Crawford (a) wrongfully disputed, denied, and delayed medical benefits, (b) misrepresented which benefits were and were not covered, (c) failed to provide required notices and other information, (d) repeatedly agreed to pay for benefits and services but then refused to do so, (e) performed inadequate and misleading investigations into the Johnsons' claim for benefits, and (f) falsely accused the Johnsons of insurance fraud, leading to their wrongful arrests and a two-year prosecution that ultimately terminated in the Johnsons' favor. In short, the Johnsons allege that, "[r]ather than manage the claim" and adjust it "in a fair and reasonable manner," Crawford "resorted to combat tactics to wreak havoc on Glenn's and Natalie's lives."

Based on these allegations, the Johnsons pled numerous causes of action, some sounding in tort (negligence; gross negligence; negligent, fraudulent, and intentional misrepresentation; fraud; fraud by non-disclosure; fraudulent inducement; intentional infliction of emotional distress; malicious prosecution; and conspiracy); some sounding in contract (breach of contract; quantum meruit; and breach of the common law duty of good faith and fair dealing); and some alleging violations of statutory duties (under the Texas Insurance Code and the Texas Deceptive Trade Practices Act). The Johnsons sought relief in the form of actual damages for physical injuries, mental injuries, loss of income, and loss of reputation; exemplary damages; statutory damages; and injunctive relief prohibiting Crawford from continuing to engage in such "extreme and outrageous" conduct.

The Johnsons specifically pled that the Texas Workers' Compensation Act does not require them to pursue their claims through its administrative procedures or otherwise exhaust

2

administrative remedies because (1) the Act's administrative procedures do not apply to some of their claims; (2) Crawford's "subterfuge" of the workers' compensation system relieves the Johnsons from any duties under that system; and (3) the Johnsons are seeking to recover for "independent injuries . . . that are unrelated to [Glenn's] workers['] compensation injuries and the benefits that he is entitled to under that system." While the Johnsons agree that they must pursue their claims for workers' compensation benefits through the administrative process, they contend that they can pursue these claims for additional, independent, and "unrelated" damages in the courts.

Crawford disagreed and filed a plea to the jurisdiction and motion for summary judgment. Relying primarily on our decision in *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012), Crawford argued that the Texas Department of Insurance Division of Workers' Compensation has exclusive jurisdiction over all of the Johnsons' claims because they arise out of the workers' compensation claims-handling process. Conceding that the claims for malicious prosecution and for intentional infliction of emotional distress could "arguably survive the landmark decision in *Ruttiger*," Crawford alternatively asserted that no evidence supported those claims. The trial court dismissed the Johnsons' claims for breach of the common law duty of good faith and fair dealing and for violations of the Texas Insurance Code but refused to dismiss any of the other claims. The court of appeals denied Crawford's petition for mandamus relief.[1]

---

[1] ___ S.W.3d ___. The court of appeals concluded that Crawford is not entitled to mandamus relief because (1) "one could interpret" Crawford's five-month delay in filing its petition for writ of mandamus, shortly before trial, as an "effort to further hinder the timely adjudication of the Johnsons' claims"; (2) even if the court could review the denial of Crawford's plea to the jurisdiction by mandamus, Crawford has not shown that "unrelated topics appearing in the motion for summary judgment may also be reviewed via the same proceeding"; (3) the Johnsons created a fact issue by certifying through their counsel that they had exhausted all administrative remedies; and (4) "claims of malicious prosecution inherently involve activity or misconduct outside the administrative avenues created by the workers' compensation laws," nothing in the Act "purports to regulate such conduct or remedy . . . damages unrelated to the amount of workers' compensation benefits to which an employee may be entitled," and "because at least one

3

We conclude that the Division of Workers' Compensation has exclusive jurisdiction over the Johnsons' claims and the Workers' Compensation Act provides their exclusive remedies. The Act designates the Department of Insurance as the administrative agency responsible "[for overseeing] the workers' compensation system of this state" and establishes the Division of Workers' Compensation within the Department to "administer and operate" that system. TEX. LAB. CODE § 402.001. It is the Division's duty to "(1) regulate and administer the business of workers' compensation in this state; and (2) ensure that [the Act] and other laws regarding workers' compensation are executed." *Id*. § 402.00114. The Division must monitor insurance carriers, employers, and others "for compliance with commissioner rules, this subtitle, and other laws relating to workers' compensation." *Id.* § 414.002(a). The Division or its commissioner may impose an array of sanctions against those who fail to comply, including a cease-and-desist order and administrative penalties up to $25,000 per day per occurrence. *Id.* § 415.021(a). As we explained in *Ruttiger*, the Act, as substantially revised in 1989, "prescribes detailed, [Division]-supervised, time-compressed processes for carriers to handle claims and for dispute resolution" and "has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements." 381 S.W.3d at 443.

In light of the Act's comprehensive system for resolving workers' compensation claims[2] and the Division's role in that process, we concluded in *Ruttiger* that the Act provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly

cause of action continues to exist, despite *Ruttiger*, we cannot say that the trial court abused its discretion in refusing to dismiss all the causes of action." *Id.* at ___.

[2] *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 495 (Tex. 2013) (explaining that "the Legislature devised a comprehensive workers' compensation system, with specific benefits and procedures based on the public policy of the State of Texas. We concluded in *Ruttiger* that the Court should not alter the Act's comprehensive scheme, and we reaffirm that principle today.").

4

investigated, handled, or settled a workers' claim for benefits. Specifically, we held that the worker in that case could not recover against the carrier for violations of section 541.060 of the Texas Insurance Code, which prohibits all insurance carriers generally (not just workers' compensation carriers) from engaging in "unfair settlement practices with respect to a claim by an insured." TEX. INS. CODE § 541.060(a). "Permitting a workers' compensation claimant to additionally recover by simply suing under general provisions of Insurance Code section 541.060," we explained, "would be inconsistent with the structure and detailed processes of the Act." *Ruttiger*, 381 S.W.3d at 443. We concluded that the Act's "provisions for dispute resolution and remedies for failing to comply with those provisions in the workers' compensation context are exclusive of those in section 541.060." *Id*. at 444.[3]

We also held that the claimant in *Ruttiger* could not recover on his claims under section 542.003(a)(3) of the Insurance Code, which requires insurers to "adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies." TEX. INS. CODE § 542.003(a)(3). "[I]n light of the specific substantive and procedural requirements built into the Act," we concluded, "and the detrimental effects on carriers flowing from penalties that can be imposed for failing to comply with those requirements, the Legislature did not intend for workers' compensation claimants to have a cause of action against the carrier under the general provision of section 542.003." *Ruttiger*, 381 S.W.3d at 445.

For the same reasons, we also overruled our precedent that pre-dated the current version of the Act and held that "an injured employee may not assert a common-law claim for breach of the duty of good faith and fair dealing against a workers' compensation carrier." *Id*. at 433 (overruling *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988)). We reasoned that allowing the carrier

---

[3] We likewise held that the claimant could not recover on his DTPA claim because that claim, "as pled and submitted to the jury[,] depended on the validity of his Insurance Code claim[s]." *Ruttiger*, 381 S.W.3d at 446.

to risk common law liability in addition to liability under the Act "distorts the balances struck in the Act and frustrates the Legislature's intent to have disputes resolved quickly and objectively." *Id*. at 451. "Recognizing and respecting the Legislature's prime position in enacting, studying, analyzing, and reforming the system, and its efforts in having done that," we concluded that "[t]he Act effectively eliminates the need for a judicially imposed cause of action outside the administrative processes and other remedies in the Act." *Id*.

We did not hold in *Ruttiger*, however, that the Act bars every statutory and common law claim that can be asserted against a workers' compensation carrier. To the contrary, we concluded that the Act did not bar a claim under section 541.061 of the Insurance Code, which makes it unlawful for an insurer to "misrepresent an insurance policy." *Id.* at 445–46; *see also* TEX. INS. CODE § 541.061. We explained that, "[u]nlike section 541.060," which prohibits unfair settlement practices, "section 541.061 does not specify that it applies in the context of settling claims." *Ruttiger*, 381 S.W.3d at 446. We held that because section 541.061's prohibition against misrepresentation of an insurance policy "does not evidence intent that it be applied in regard to settling claims, it is not at odds with the dispute resolution process of the workers' compensation system." *Id*. We ultimately concluded, however, that there was no evidence to support the section 541.061 claim in that case because there was no evidence of an "untrue statement made by [the insurer] regarding the policy or any statement about the policy that misled [the plaintiff-insured]." *Id*.

In summary, we held in *Ruttiger* that workers' compensation carriers cannot be liable under the Insurance Code for unfair claims settlement practices or for failing to adopt reasonable standards for investigating claims, or under the common law for breach of a duty of good faith and fair dealing, because these claims "simply are not compatible with amended detailed procedural

6

and substantive provisions of the new Act." *Id.* at 456. Although we agreed that "the new Act's language does not purport to preclude all types of claims against workers' compensation insurers," we concluded that, for claims arising out of the claims-settlement process, "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrate[s] legislative intent for there to be no alternative remedies." *Id.* at 444, 456.

In this case, the parties dispute whether and how *Ruttiger* applies to causes of action that we did not specifically address in that case. The court of appeals concluded that it "is not as clear" that we "vitiated the existence of" any other claims in *Ruttiger* because we "said nothing of" them. ___ S.W.3d ___. The court read our *Ruttiger* decision to focus on whether the claims are "inconsistent with the current legislative/administrative workers' compensation scheme," and concluded that neither *Ruttiger* nor Crawford explains how a malicious prosecution claim asserting "baseless criminal proceedings by an insurer against an employee and the amelioration of damages caused by such misconduct fits in the legislative/administrative workers' compensation scheme." *Id.* at ___. The court concluded that a malicious prosecution claim "does not serve to protect, secure or timely resolve disputes involving the availability of workers' compensation benefits due a claimant," and "because at least one cause of action continues to exist, despite *Ruttiger,* [the court could not] say that the trial court abused its discretion in refusing to dismiss all the causes of action." *Id.*

We agree with Crawford that the court of appeals read *Ruttiger* too narrowly. As other courts of appeals have recognized,[4] the rule we applied in *Ruttiger* is that the Act provides the

---

[4] *See, e.g.*, *Davis v. Am. Cas. Co. of Reading, Pa.*, No. 07-13-00190-CV, 2014 WL 2553379, at *2 (Tex. App.—Amarillo June 4, 2014, pet. denied) (holding that *Ruttiger* precludes claims for breach of contract, breach of the duty of good faith and fair dealing, Insurance Code and DTPA violations, and negligence because all claims "arise out of [the carrier's] handling of [the] workers' compensation claim"); *Hopper v. Argonaut Ins. Co.*, No. 03-12-00734-CV, 2013 WL 5853747, at *4 (Tex. App.—Austin Oct. 18, 2013, no pet.) (mem. op.) (holding that *Ruttiger* "eliminates" claims because there is no evidence of any "conduct that does not implicate the claim-settlement process" and all claims "are limited to complaints about delays, claim handling, and disputes regarding entitlement to benefits");

7

exclusive process and remedies for claims arising out of a carrier's investigation, handling, or settling of a claim for workers' compensation benefits. We held that the Act bars claims for breach of the duty of good faith and fair dealing and claims under sections 541.060 and 542.003, not because those are the only claims the Act bars, but because those claims are necessarily based on the investigation and settlement of benefit claims. *Ruttiger*, 381 S.W.3d at 443–45. Similarly, we held that the Act did not bar the claim under section 541.061, not because that is the only claim the Act does not bar, but because that section does not address misrepresentations made "in regard to settling claims" for benefits. *Id*. at 446.

Whether the Act provides the exclusive process and remedies, therefore, does not depend on the label of the cause of action asserted. As we have often explained, claimants may not recast claims to avoid statutory requirements or to qualify for statutory protections. *See Diversicare Gen. Partner*, *Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (focusing on the essence of plaintiff's claim and finding it had to meet MLIIA requirements) (citing *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 38 (Tex. 1998); *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995) (per curiam) (finding that plaintiff's pleading was an attempt to recast malpractice claim as a DTPA action); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994) (emphasizing that health care liability claim could not be re-cast as a different claim)). Instead, in assessing whether a claim falls within the Division's exclusive jurisdiction, courts must look at the substance of the claim. *Id.*

---

*Bean v. Tex. Mut. Ins. Co*., No. 09-11-00123-CV, 2012 WL 5450826, at *1 (Tex. App.—Beaumont Nov. 8, 2012, no pet.) (mem. op.) (holding that claims "are within the exclusive jurisdiction of the Texas Department of Insurance" because they "concern[] the claims handling process"); *Carpenter v. Sw. Med. Examination Servs., Inc*., 381 S.W.3d 583, 585–87 (Tex. App.—Eastland 2012, no pet.) (applying *Ruttiger* to hold that the Act precludes claims for common-law bad faith, statutory bad faith, fraud, and conspiracy to commit fraud based on allegations that carrier delayed paying benefits and concealed the nature of its relationship with reviewing doctor because the claims related to "the manner in which the carrier had handled the processing of [the] workers' compensation claim").

Nor does the *Ruttiger* rule depend on the nature of the relief the claimant seeks. The Johnsons contend that the Act does not bar their claims because they are seeking damages that are "unrelated" to workers' compensation benefits and based on injuries that are "independent" of harm the Act is intended to prevent. As we noted in *Ruttiger*, however, "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrat[es] legislative intent for there to be no alternative remedies." 381 S.W.3d at 444.

Applying the *Ruttiger* rule to this case, we first conclude that the Act bars the Johnsons' claims for negligence, gross negligence, breach of contract, quantum meruit, breach of the duty of good faith and fair dealing, and statutory violations. In support of these causes of action, the Johnsons allege that Crawford failed to act reasonably in responding to the Johnsons' claims for benefits and made and then breached promises and representations that it would pay certain benefits. Because all of these claims arise out of Crawford's investigation, handling, and settling of the Johnsons' claim for workers' compensation benefits, the Act provides the exclusive procedures and remedies for these claims.

We reach the same conclusion regarding all of the Johnsons' common law and statutory causes of action based on allegations of deception, fraud, and misrepresentation. Because we held in *Ruttiger* that the Act does not necessarily bar a claim for misrepresenting an insurance policy under section 541.061 of the Insurance Code, our analysis on these claims is a bit more complex. The Johnsons contend that our holding in *Ruttiger* confirms that they can pursue all of their claims for misrepresentation and fraud. But we based our holding in *Ruttiger* on the fact that "section 541.061 does not specify that it applies in the context of settling claims." *Ruttiger*, 381 S.W.3d at 446. We held that, because section 541.061 "does not evidence intent that it be applied in regard

9

to settling claims, it is not at odds with the dispute resolution process of the workers' compensation system." *Id*.

This case presents a question we did not expressly address in *Ruttiger*: whether the Division has exclusive jurisdiction over a claim for "misrepresentation of an insurance policy" when the alleged misrepresentation occurs within the claims-settlement context. We hold that it does.[5] The Act specifically addresses and prohibits a carrier from making misrepresentations, including misrepresentations "to an employee" regarding the Act's provisions and "the reason for not paying benefits or terminating or reducing the payment of benefits." TEX. LAB. CODE § 415.002(a)(1), (13). The Act's comprehensive system for resolving workers' compensation claims encompasses prohibitions against fraud and misrepresentations made within the claims-settlement context, and grants the Division authority to regulate and sanction any such conduct. Because all of the Johnsons' misrepresentation-based claims complain of misrepresentations that Crawford allegedly made in connection with its investigation, handling, and settling of the Johnsons' claims for workers' compensation benefits,[6] we hold that the Division had exclusive jurisdiction to address those claims.

---

[5] At least two courts of appeals have reached this same conclusion. *See Hopper*, 2013 WL 5853747, at *1, 4 (holding that carrier was entitled to summary judgment on claim regarding "false statements" that claimants "were not entitled to coverage" because the claim was "limited to complaints about delays, claim handling, and disputes regarding entitlement to benefits"); *Bean*, 2012 WL 5450826, at *1 (holding that misrepresentation claims were within the Division's exclusive jurisdiction because those claims "concern[] the claims handling process," and worker "did not claim that the terms of the insurance policy covering his employer had been misrepresented to his employer"). As the *Hopper* court explained, we stated in *Ruttiger* "that section 541.061 applies to misrepresentations of a policy's terms, not misrepresentations about whether a specific claim is factually within a policy's terms." *Hopper*, 2013 WL 5853747, at *3. The alleged misrepresentations in that case "concerned statements about whether [the worker's] death resulted from a compensable injury and whether the Hoppers were his true beneficiaries," and "[a]lthough *Ruttiger* did not specifically involve common-law claims of fraudulent and negligent misrepresentation or unconscionability, these claims fail in the present case because there is no evidence here of any fraudulent, negligent, or unconscionable conduct that does not implicate the claim-settlement process." *Id*. at *3–*4.

[6] The Johnsons allege, for example, that Crawford "made blatantly false statements to avoid coverage and to avoid paying both income and medical benefits"; made "clearly untrue statements of material facts, including withholding proper home healthcare and paying the injured worker and his spouse directly to arrange and provide necessary care"; and "failed to state and to disclose known material facts that the lifetime income benefits were payable."

We now turn to the Johnsons' claims for malicious prosecution and intentional infliction of emotional distress, which are both based on allegations that Crawford falsely reported to a district attorney that the Johnsons committed insurance fraud by requesting mileage reimbursements for travel that had not occurred. We hold that the Division has exclusive jurisdiction over these claims because they also arise out of Crawford's investigation, handling, and settling of the Johnsons' claims for workers' compensation benefits. The mileage reimbursements at issue were part of the Johnsons' medical benefits under the Act, and carriers are required to report suspected fraud to the Department or to an authorized governmental entity as part of their claims-handling responsibilities. TEX. INS. CODE § 701.051(a). If a carrier knowingly and intentionally makes a false or misleading statement with the intent to deny the payment of a benefit, as the Johnsons allege Crawford did in this case, the Act provides the claimant with remedies, including criminal penalties. TEX. LAB. CODE §§ 415.008, 418.001. Because the Johnsons' causes of action for malicious prosecution and intentional infliction of emotional distress arise out of Crawford's investigation, handling, and settling of a workers' compensation claim, we hold that the Division had exclusive jurisdiction over those complaints.[7]

Finally, we turn to the Johnsons' argument that Natalie Johnson is not seeking relief as an ASARCO employee and thus her claims are independent of the Act and therefore not barred by it.

---

[7] Because the Act's grant of exclusive jurisdiction bars the courts from exercising jurisdiction over the claims, we reject the Johnsons' complaints that Crawford waived its argument that the Act bars the claims for malicious prosecution and is judicially estopped from raising them on mandamus. The Johnsons contend that Crawford's counsel "judicially admitted" in the trial court that the malicious prosecution claim "is outside of comp," and "[c]omp has nothing to do with malicious prosecution and we're not arguing that it does." We need not decide whether these statements could constitute a waiver, judicial admission, or the basis for judicial estoppel, because even if they could, such doctrines cannot create subject-matter jurisdiction where it does not otherwise exist. *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001) ("As a general rule, a court cannot acquire subject-matter jurisdiction by estoppel."); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver' . . . .") (quoting *Federal Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)).

Specifically, the Johnsons argue that Natalie "has causes of action for malicious prosecution, intentional infliction of emotional distress, quantum meruit, and breach of contract all of which . . . do not arise under the Act because she was not an employee of ASARCO." But Natalie's claims, like Glenn's, arise out of Crawford's conduct in investigating, handling, and settling Glenn's claim for workers' compensation benefits. Specifically, she complains that Crawford breached promises to pay her to provide services to Glenn and that Crawford maliciously caused her to be prosecuted for insurance fraud. We have held that an employee's spouse cannot bring a separate action alleging claims under the Act. *See Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex. 1989) (recognizing that any claims compensable under the Act could not be brought by non-employee spouse except for intentional tort claims). The only noted exception to this rule is if a spouse is pursuing a loss of consortium claim where there is evidence that the employer's intentional tort caused the employee's injury. *Id.* ("Therefore, Mrs. Rodriguez' suit for loss of consortium is barred by the Workers' Compensation Act unless she can establish that the injury caused her husband was intentional."); *see also Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738–39 (Tex. 1980). We conclude that, even if Natalie Johnson has standing to assert her claims, they fall within the Division's exclusive jurisdiction.

Having concluded that the Division has exclusive jurisdiction over the Johnsons' claims against Crawford, we further conclude that Crawford is entitled to mandamus relief. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 624 (Tex. 2007) (granting mandamus to require dismissal of claims over which Public Utility Commission had exclusive jurisdiction because "[a]llowing the trial court to proceed if the PUC has exclusive jurisdiction would disrupt the orderly processes of government"); *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (same). Because the Johnsons' claims arise out of Crawford's investigation, handling, and settling of workers'

12

compensation claims, they fall within the Division's exclusive jurisdiction and the Act provides the sole process and remedies for those claims. Because the Johnsons failed to exhaust their administrative remedies under the Act prior to filing this action, the trial court lacked jurisdiction and should have dismissed it. *See City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) ("Absent exhaustion of administrative remedies, a trial court must dismiss the case.").

Pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral arguments, we conditionally grant mandamus relief and direct the 108th District Court to withdraw its order denying Crawford's plea to the jurisdiction and dismiss the Johnsons' claims for lack of subject-matter jurisdiction. Our writ will issue only if the court fails to act in accordance with this opinion.

**Opinion Delivered:** February 27, 2015