

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00117-CV

———————————————————

IN THE INTEREST OF A.F., W.J., A.J., AND J.J., CHILDREN

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-621373-17

Before Birdwell, Bassel, and Womack, JJ.
Opinion by Justice Birdwell

## OPINION

Mother and Father[1] appeal the termination of their parental rights, arguing that the trial court lost jurisdiction before rendering judgment because it failed to comply with the family code's one-year deadline for termination suits. *See* Tex. Fam. Code Ann. § 263.401(a). We agree that the trial court lost jurisdiction and that the judgment is void. Therefore, we vacate the trial court's judgment and dismiss the appeal.

### I. BACKGROUND

On June 28, 2017, the Texas Office of the Attorney General (OAG) filed a petition to establish Father's paternity with regard to two of Mother's children: A.J. and J.J. The petition asserted that Father had already legally acknowledged his parent-child relationship with the oldest of the couple's three children, W.J., by executing and filing an Acknowledgement of Paternity with the Vital Statistics Unit pursuant to chapter 160 of the family code. *See id.* §§ 160.301–.302, .304–.305. In the same pleading, the OAG filed a suit affecting parent-child relationship (SAPCR)[2] as to all three children, seeking the appointment of "appropriate conservators" pursuant to family code section 153.005 and an order of current and retroactive child and medical support pursuant to family

---

[1]We use pseudonyms to refer to the children and their parents. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]"'Suit affecting parent-child relationship' means a suit filed as provided by [Title 5 of the Family Code] in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." Tex. Fam. Code Ann. § 101.032(a).

code chapter 160. On December 5, 2017, the trial court entered a default temporary order—after Father failed to appear at the hearing due to his incarceration in Henderson, Texas—establishing the parent-child relationship between Father and the three children, appointing Mother as their managing conservator, appointing Father their possessory conservator, and ordering Father to pay child support. Due to the following intervening events and the subsequent judicial admission of paternity by Father in eventually seeking custody, the trial court never entered a final order on the SAPCR filed by the OAG.

On January 8, 2018, the Texas Department of Family and Protective Services (the Department) filed—in the same cause number as the paternity suit—a Motion for Orders in Aid of Investigation of a Report of Child Abuse or Neglect pursuant to chapter 261 of the family code. The Department sought ex parte orders from the trial court to facilitate its investigation into allegations of child abuse and neglect of not only W.J., A.J., and J.J., but also an older half-sibling, A.F., all of whom allegedly lived with Mother at their maternal grandmother's residence.

In a supporting affidavit, the Department investigator, Nicole Rosier, summarized the allegations of abuse and neglect made the basis of the motion as the abusive use of cocaine and alcohol by Mother, the maternal grandmother, and an uncle while living in a dilapidated home, as well as the absence of electricity and running water in that home, the latter requiring the use of a bucket as a toilet. Rosier further noted reports that the children had been seen asking for food in the neighborhood and that

Mother had been beating them with her fists. Rosier had been able to interview W.J, A.J., and J.J. at school, but Mother and the maternal grandmother had either repeatedly denied or otherwise avoided granting Rosier access to the children themselves and to the home for Rosier's investigation. Significantly, the report initiating the investigation occurred on December 7, 2017, just two days after Mother had appeared with the OAG for the hearing resulting in the default temporary order adjudicating Father's paternity.

Based on Rosier's affidavit, and specifying family code section 261.303 for its authority, on January 8, 2018, the trial court entered an order authorizing a representative of the Department to have immediate investigatory access to each of the children, including immediate access to their home for the purpose of interviewing them and examining the premises for evidence of abuse or neglect. *See id.* § 261.303 (allowing trial court to order interview, examination, or investigation for good cause if admission to child's home, school, or place where the child may be cannot be obtained). Having obtained court-ordered access to the children through this second SAPCR, the Department made no further filings related to this motion and order.

On March 1, 2018, however, the Department filed—again, in the same cause number—its original petition to terminate Mother's and Father's respective parental rights with regard to W.J., A.J., and J.J., as well as Mother's and A.F.'s father's parental rights to A.F. The petition urged neither the filing of the original paternity SAPCR nor the chapter 261 motion for orders in aid of investigation as the statutory basis for the trial court's jurisdiction; instead, it invoked the trial court's jurisdiction pursuant to

4

family code chapter 262: "This Court has jurisdiction of the suit affecting the parent-child relationship and of the suit for protection of a child under chapter 262, Texas Family Code, and Petitioner believes no other Court has continuing, exclusive jurisdiction over the children." Indeed, despite the fact that Mother, Father, and the OAG were already before the trial court as parties to the original paternity SAPCR, the Department requested service of process on Mother, Father, and A.F.'s father, and asserted service by mail upon the OAG, as required by section 102.009 of the Texas Family Code upon "the filing of a petition in an original suit." *See id.* § 102.009(a)(1) ("a managing conservator"), (a)(2) ("a possessory conservator"), (a)(7) ("each parent as to whom the parent-child relationship has not been terminated or process has not been waived under Chapter 161"), (d) ("Title IV-D agency").[3]

---

[3]We note that the record shows some confusion about service of process upon Father, in that the trial court and the Department gave varying accounts of whether and when Father had been served or waived service. An April 5, 2018 order by the trial court recited that Father was personally served with citation the previous month and that the return had been filed shortly thereafter. However, on April 18, 2018, the Department filed a status report in which it represented that Father had not yet been served. In May 2018, the trial court rendered an order following a status hearing in which it again recited that Father had been served. In its July 2018 permanency report, though, the Department represented that Father had waived service on March 19, 2018. Then, in its November 2018 report, the Department represented that Father had instead waived service on February 28, 2018—the day before the Department filed suit requesting service. Finally, at trial, counsel for the Department represented that a return showing successful service had been filed on March 8, 2018. No return or waiver of service appears in the record. Nevertheless, Father has not contested the issue of service, so we do not consider it further.

In support of this second SAPCR, including its request for emergency orders to obtain removal, possession, and temporary sole managing conservatorship of the children, the Department again attached an affidavit from Rosier, wherein she referenced "a priority 2 intake" received by the Department on February 22, 2018, asserting essentially the same allegations of abuse and neglect made the basis of the Department's first SAPCR. Significantly, however, Rosier's second affidavit established that the Department considered this investigation to be "a new case" because despite the Department's having obtained a court order for access in the first SAPCR, "[t]hat [prior] case was closed" due to Mother's lack of cooperation, and Mother was "still refus[ing] caseworker entry to the home." In addition to recounting much of the information contained in her original affidavit, Rosier provided additional information justifying the emergency relief and other relief sought by the Department in this second SAPCR, including an outcry from A.J. of being subjected to pornographic material by an uncle that lived in the home.

On the same day the Department filed its second SAPCR, the trial court rendered an emergency order naming the Department as the children's temporary sole managing conservator, asserting jurisdiction under section 262.002 of the family code. *Id.* § 262.002. It is undisputed that under section 263.401 of the family code, the emergency

A.F.'s father was eventually cited by publication, *see id.* § 102.010(a), and an ad litem was appointed to represent his interests, *see id.* § 107.013(a)(2). A.F.'s father is not involved in this appeal.

6

order triggered a one-year statutory dismissal deadline for the trial court (1) to commence a trial on the merits, (2) on the basis of certain express findings, to render an order extending the original deadline up to 180 days (and to thereafter commence a trial on the merits within the extended deadline), or (3) to dismiss the second SAPCR. *See id.* § 263.401(a), (b). The original dismissal deadline was to expire on the first Monday after one year had passed, which was March 4, 2019. *See id.* Trial was set for February 27, 2019.

As the trial setting and the dismissal deadline approached, though, Father filed a motion for continuance. A hearing was scheduled on Father's motion. The parties agree that no record was made of the proceeding. The parties disagree on the outcome of the hearing: Mother and Father contend that no order of continuance extending the dismissal deadline was formally rendered; the Department contends that an extension and continuance were both granted, citing an entry in the trial court's case management system, which was electronically signed by an associate judge, indicating that the trial court had "granted extension and reset on or before 4/30/19."

Regardless, the original dismissal deadline of March 4, 2019, soon passed, and neither Mother nor Father filed a motion to dismiss the proceeding. On March 26, 2019, the presiding judge commenced a bench trial. On the first day of trial, the Department presented and asked the trial court to sign an order purporting to grant an extension of the dismissal deadline under section 263.401(b). In response to the trial court's query, counsel for Mother and Father stated that they had no objection to the

proposed order, which the trial court then signed. The order found, without factual explanation, that extraordinary circumstances and the best interest of the children necessitated the retention of the case on the trial court's docket and the continued temporary managing conservatorship of the Department. The order further extended the dismissal deadline to August 30, 2019, not the April 30, 2019 date set forth in the case management system entry. And although the order provided a line for the entry of a new trial setting as required by section 263.401(b), the trial court left it blank upon signing.

After hearing the evidence, the trial court granted termination as to all of the parents and named the Department as the permanent managing conservator of all four children. Mother and Father appeal.

## II.    WHICH VERSION OF FAMILY CODE SECTION 263.401 APPLIES?

To begin with, the parties dispute which version of the statutory dismissal deadline should apply in these proceedings. The difference is critical because under the current version of section 263.401, the one-year deadline is jurisdictional and dismissal is automatic. *See In re G.X.H.*, No. 14-19-00053-CV, 2019 WL 2631165, at *1 (Tex. App.—Houston [14th Dist.] June 27, 2019, no pet. h.). Under the former version of that section, the deadline was not jurisdictional, *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009) (orig. proceeding), and it was incumbent on the parent to move for dismissal or else risk forfeiting any complaint that the deadline had passed.

*In re M.T.R.*, No. 14-18-01058-CV, 2019 WL 2144685, at *8 (Tex. App.—Houston [14th Dist.] May 16, 2019, no pet.) (collecting cases).

Complicating the analysis, sections 263.401 and 263.402 were amended twice by the 85th Legislature in 2017 through the enactment of Senate Bill 11 and House Bill 7. Act of May 28, 2017, 85th Leg., R.S., ch. 319, §§ 12–13, 2017 Tex. Sess. Law Serv. 716, 721–22 (S.B. 11); Act of May 24, 2017, 85th Leg., R.S., ch. 317, §§ 27–28, 2017 Tex. Sess. Law Serv. 615, 623–24 (H.B. 7). The language of the relevant amendments is identical in House Bill 7 with the sole addition of an additional sentence requiring judicial notification of impending dismissal:

> Sec. 263.401. DISMISSAL AFTER ONE YEAR; NEW TRIALS; EXTENSION. (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b–1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the *court's jurisdiction over* [court shall dismiss] the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child *is terminated and the suit is automatically dismissed without a court order.* **Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.**
>
> (b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

9

(1) schedules the new date on which the suit will be *automatically* dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);

(2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and

(3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

. . . .

Sec. 263.402. LIMIT ON EXTENSION[; WAIVER]. [(a)] The parties to a suit under this chapter may not extend the deadlines set by the court under this subchapter by agreement or otherwise.

[(b) A party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences.]

*Compare* Act of May 28, 2017, 85th Leg., R.S., ch. 319, §§ 12–13, 2017 Tex. Sess. Law Serv. 716, 721–22, *with* Act of May 24, 2017, 85th Leg., R.S., ch. 317, §§ 27–28, 2017 Tex. Sess. Law Serv. 615, 623–24 (additional language in bold).

Pursuant to section 311.025(b) of the government code, "if amendments to the same statute are enacted during the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each. If the amendments are irreconcilable, the latest in date of enactment prevails." Tex. Gov't Code Ann. § 311.025(b). Because neither Senate Bill 11 nor House Bill 7 references the other—and because the additional language in the latter

requiring judicial notification of impending dismissal is easily harmonized with the identical remaining language of the former—there appears to be no textual basis for failing to give effect to both. *See id.*

Although the legislature gave both bills an effective date of September 1, 2017, unfortunately, they included slightly different—but ultimately immaterial—savings clauses[4] for the amendments to section 263.401.[5] House Bill 7 added the following savings clause for that section:

> The changes made by this Act to Section 263.401, Family Code, apply only to a suit affecting the parent-child relationship pending in a trial court on the effective date of this Act or filed on or after the effective date of this Act. A suit affecting the parent-child relationship in which a final order is rendered before the effective date of this Act is governed by the law in effect on the date the order was rendered, and the former law is continued in effect for that purpose.

---

[4]"A savings clause is a clause providing that [a] former law is continued in effect for certain purposes." *City of Hous. v. Hous. Firefighters' Relief & Ret. Fund*, 196 S.W.3d 271, 283 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Firemen's Pension Comm'n v. Jones*, 939 S.W.2d 730, 733 (Tex. App.—Austin 1997, no writ)).

[5]Senate Bill 11 included a savings clause applicable only to the amendments to family code section 263.401, but House Bill 7 also included a general savings clause applicable to the remainder of the amendments. Act of May 24, 2017, 85th Leg., R.S., ch. 317, § 73(c), 2017 Tex. Sess. Law Serv. 615, 640. Both bills amended the family code by deleting former section 263.402(b), which had expressly provided that a party waived any objection to the failure of the trial court to commence the trial on the merits before the original or extended dismissal deadline by failing to file a motion to dismiss on that basis. Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, 2007 Tex. Gen. Laws 1837, 1838 (repealed 2017). *See generally In re M.T.R.*, No. 14-18-01058-CV, 2019 WL 2144685, at *8 (Tex. App.—Houston [14th Dist.] May 16, 2019, no pet.) (collecting cases). Ultimately, this anomaly does not affect our analysis of the issue.

11

Senate Bill 11's savings clause reads:

> The changes in law made by this Act to Section 263.401, Family Code, apply only to a suit affecting the parent-child relationship filed on or after the effective date of this Act. A suit affecting a parent-child relationship filed before the effective date of this Act is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose.

*Compare* Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 33, 2017 Tex. Sess. Law Serv. 716, 738 (S.B. 11), *with* Act of May 24, 2017, 85th Leg., R.S., ch. 317, § 73(b), 2017 Tex. Sess. Law Serv. 615, 640 (H.B. 7). Since the last legislative vote was taken on Senate Bill 11, its savings clause prevails. Regardless, the applicability of the amendments to section 263.401 to a particular suit depends on whether the savings clauses' references to "a suit affecting the parent-child relationship" denotes solely those termination SAPCRs filed by the Department specifically or more generally all categories of SAPCRs as defined by section 101.032(a), including suits to establish paternity. Tex. Fam. Code Ann. § 101.032(a).

The Department urges the latter interpretation controls, arguing that the filing of its termination petition was merely an intervention in the original paternity SAPCR filed by the OAG in June 2017, before the effective date of the amendments, thereby "saving" the former version of section 263.401 for application in this case. The Department impliedly reasons that because its petition for termination was later filed in the same cause number, it is part of the same SAPCR as the paternity suit.

12

Conversely, Mother and Father appear to argue that because the Department's petition for termination was not filed until March 1, 2018, after the effective date of the amendments, the amended version of the statute should apply. Mother and Father would consider the Department's termination petition to be a separate and distinct SAPCR with a separate filing date from the OAG's petition to establish paternity. In their perspective, because the parentage and termination actions are distinct categories of SAPCRs, the OAG's filing of the parentage action has no bearing on which version of section 263.401 should apply. We agree with Mother and Father.

Circumstantially, these two suits were united only by a cause number and their general relation to the subject of paternity. In all other respects, the suits were two separate, distinct, and original proceedings. The paternity SAPCR and the termination SAPCR were different statutory proceedings filed by different governmental entities seeking different statutory remedies at different times.

In its "Original Petition" for termination, the Department did not claim that its termination SAPCR related back to the filing of the OAG's paternity SAPCR; indeed, the Department's petition made no reference to the earlier filing. Instead, the petition urged chapter 262 as the sole statutory basis for the trial court's jurisdiction: "This Court has jurisdiction of the suit affecting the parent-child relationship and of the suit for protection of a child under Chapter 262, Texas Family Code, and Petitioner believes no other Court has continuing, exclusive jurisdiction over the children." And despite the fact that Mother, Father, and the OAG were already before the trial court as parties to

13

the original paternity SAPCR, in its termination SAPCR the Department requested service of process on Mother, Father, and A.F.'s father, and asserted service by mail upon the OAG, as required by section 102.009 of the Texas Family Code upon "the filing of a petition in an *original* suit." *See id.* § 102.009(a) (emphasis added). In the attached affidavit in support of removal, investigator Rosier described the suit as a "new case" distinct from the investigative SAPCR filed in her original investigation, the factual basis of which had nothing to do with establishing the paternity of the children.

Moreover, because the trial court had not rendered a final order in the paternity SAPCR, the Department's subsequent termination petition was governed by the family code's directive that "[u]nless a final order has been rendered by a court of continuing, exclusive jurisdiction, a subsequent suit shall be commenced as an *original* proceeding." *Id.* § 155.001(d) (emphasis added). Thus, in circumstances similar to ours—when there had been, for present purposes, no final judgment in a prior SAPCR—the Texas Supreme Court described a subsequent SAPCR as a "*new suit* in which no court ha[d] continuing exclusive jurisdiction." *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding) (emphasis added) (internal quotation marks omitted) (citing the statutory predecessor to family code section 155.001).

Indeed, compared to other categories of SAPCRs, termination SAPCRs are both substantively and procedurally distinct proceedings. *See Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex. 1980) ("Termination suits are separate from any other suit affecting the parent-child relationship, and a termination judgment is a final, appealable judgment.").

Children removed from their home and in the Department's care constitute a unique class. They are not similarly situated as, for example, children whose divorced parents are litigating custody or child support, children who live in stable homes but have one parent whose parentage is being adjudicated or whose parental rights are sought to be terminated, or newborn children whose parents voluntarily relinquish their parental rights so they may be adopted.

*G.X.H.*, 2019 WL 2631165, at *7. Compared with SAPCRs seeking conservatorship, possession, or support, a SAPCR requesting termination seeks relief that is "complete, final, [and] irrevocable . . . divest[ing] for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Wiley v. Spratlan*, 543 S.W.2d 349, 351–52 (Tex. 1976). As a result, procedurally, the standard of proof in a termination SAPCR is "clear and convincing evidence" as to both the grounds for termination and the best interest of the child. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam).

Similarly, by way of contrast to a paternity SAPCR, "a suit for termination of parental rights generally may be tried by a jury." *G.X.H.*, 2019 WL 2631165, at *3 (comparing Tex. Fam. Code Ann. § 105.002(a) ("Except as provided by Subsection (b), a party may demand a jury trial."), with § 160.632 ("The court shall adjudicate paternity of a child without a jury.")). Thus, in *G.X.H.*, the court rejected the notion that the date of commencement of a proceeding to adjudicate paternity conducted as part of a suit for termination of parental rights should be considered in determining when "trial on the merits" for the termination commenced for purposes of satisfying the dismissal deadline of section 263.401. *Id.*; *see* Tex. Fam. Code Ann. § 263.401(a) (providing that

15

dismissal is automatic unless trial court has "commenced the trial on the merits" or validly extended the time to commence trial on the merits). Characterizing the two actions as the same, the court said, "would conflict with a party's constitutional right to a jury trial in a suit to terminate parental rights." *G.X.H.*, 2019 WL 2631165, at *3.

Moreover, the two SAPCRs contemplate fundamentally opposite forms of relief. The result of a parentage proceeding is an "order adjudicating parentage," which may establish a parent-child relationship. *Id.* (citing Tex. Fam. Code Ann. § 160.636). The object of a termination suit is to obtain an order terminating the parent-child relationship. *See* Tex. Fam. Code Ann. § 161.206(a). It would be an irony to hold that the filing of a SAPCR to *establish* Father's parental rights may double as the filing of a SAPCR to *terminate* those very same rights as to both Father and Mother.

Rather, textually, the statute's plain language and context make clear that the identity of the party filing "a suit affecting a parent-child relationship" and the remedy sought thereby are dispositive of which version of the statutory dismissal deadline applies in this case. A dispute about which version of a statute applies is a matter of statutory construction that we review de novo. *Heritage Operating, LP v. Barbers Hill ISD*, 496 S.W.3d 318, 326 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (op. on reh'g). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. *Id.* If a statute assigns a definition to a term, we are bound to construe that term by its statutory definition. *Id.*

16

Undefined terms in a statute are typically given their ordinary meanings, but if a different or more precise definition of a term is apparent from the term's use in the context of the statute, we apply that meaning. *Id.*

While it is true that family code section 101.032(a) defines the phrase "suit affecting a parent-child relationship" to include SAPCRs requesting the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment of the parent-child relationship in addition to its termination, there is only one category of SAPCR to which the former and amended version of section 263.401 could possibly apply: "the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child." The amendments enacted by Senate Bill 11 and House Bill 7 made no "changes in law" applicable to a paternity or any other category of SAPCR; they dealt solely with the statutory dismissal deadline by which a termination SAPCR is to be prosecuted and decided under section 263.401. Tex. Fam. Code Ann. § 263.401(a); *see In re E.C.*, 431 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (emphasizing that the statutory deadline set forth in former section 263.401 applied solely to suit affecting the parent-child relationship "filed by the department" seeking termination of the parent-child relationship). Based on the context of these amendments, and particularly their retention of the phrase "filed by the department" as qualifying the references to the suit affecting the parent-child relationship, it stands to reason that the savings clause of the

Senate Bill 11 amendment to section 263.401—stating that the amendments "apply only to a suit affecting the parent-child relationship filed on or after the effective date of th[e] Act"—is referring to the date when the Department files a SAPCR seeking either conservatorship or termination or both. *See Johnson v. Baty*, No. 01-86-00848-CV, 1987 WL 20005, at *1 (Tex. App.—Houston [1st Dist.] Nov. 19, 1987, no writ) (not designated for publication) (concluding that where an amendment to an attorney's fees provision applied to "suits filed on or after" a date, the term "suits" naturally referred to suits for attorney's fees).

This interpretation of the savings clause recognizes that the relief sought by the Department in these types of cases often changes as these types of SAPCRs progress: in an original petition, the Department may seek only to be named a conservator of children, or it could seek only termination of the parent-child relationship, or both. The Department's goals for children—and, thus, the relief sought—often change as the parents' and children's circumstances change. For example, here, had the investigation of the alleged abuse and neglect of the children hypothetically occurred sooner, resulting in the Department's filing a SAPCR seeking only the children's removal from the home and temporary managing conservatorship *before* the effective date of the amendments, then the savings clause would have preserved the former versions of sections 263.401 and 263.402 for application in the event the Department amended its SAPCR to seek termination *after* the effective date. *See In re B.H.R.*, 535 S.W.3d 114, 118–19 (Tex. App.—Texarkana 2017, no pet.) (describing how Department originally

18

intervened in divorce action seeking emergency temporary managing conservatorship of newborn child before eventually amending its SAPCR several months later to seek termination of mother's and father's parental rights). Thus, the law the legislature intended to save was the law specifically applicable to SAPCRs seeking conservatorship or termination that the Department had filed before the effective date of the amendments. Based on the language, structure, and context of the amendments enacted by Senate Bill 11 and House Bill 7, including the savings clause of Senate Bill 11, we conclude that the Department's action to terminate parental rights is the discrete SAPCR that determines which version of section 263.401 should apply. *See G.X.H.*, 2019 WL 2631165, at *7 ("By making dismissal automatic, section 263.401 ensures a child will not be denied timely resolution and permanency by the failure, intentional or not, of the Department, the child's parents, or any other stakeholder to file a motion to dismiss, as was previously required.").

Here, it was not until March 2018 that the Department invoked the trial court's jurisdiction under the family code's termination provisions. Because the Department filed its SAPCR for termination in March 2018, after the effective date of the amendments to sections 263.401 and 263.402, the amended versions of sections 263.401 and 263.402 apply. We therefore proceed to evaluate Mother's and Father's jurisdictional challenge under those statutes.

## III.   DID THE TRIAL COURT LOSE JURISDICTION?

On appeal, Mother and Father raise two similar issues, which we address together.[6] In their first issue, Mother and Father assert that because the one-year dismissal deadline passed without a trial or a proper order of extension, the trial court automatically lost jurisdiction on March 4, 2019, rendering the subsequent termination judgment void. In their second issue, Mother and Father further contend that because the trial court had no jurisdiction, the part of the trial court's judgment naming the Department as permanent managing conservator was also void.

Issues implicating a court's subject matter jurisdiction are questions of law that we review de novo. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Under the amended version of section 263.401, the trial court automatically loses jurisdiction over the Department's termination SAPCR if the court does not commence a trial on the merits or enter a specific order of extension by the dismissal deadline provided by section 263.401(a). Tex. Fam. Code Ann. § 263.401(a), (b); *In re M.M.*, No. 05-19-00329-CV, 2019 WL 4302255, at *3 (Tex. App.—Dallas Sept. 11, 2019, no pet. h.) (mem. op.); *G.X.H.*, 2019 WL 2631165, at *1. Applying this proviso to the facts at hand, the trial court named the Department as temporary sole managing conservator of the children

---

[6]Counsel for Father initially filed an *Anders* brief explaining that there were no arguable issues and that the appeal was wholly frivolous. After Mother filed a brief arguing that the trial court lost jurisdiction when it failed to meet section 263.401's deadline, Father filed an amended brief in which he echoed Mother's argument.

on March 1, 2018, making the automatic dismissal deadline March 4, 2019—the first Monday after one year had passed. Tex. Fam. Code Ann. § 263.401(a).

It is undisputed that the trial court did not commence trial until after this deadline, on March 26, 2019. It is also undisputed that there is no record showing that the trial court orally rendered a valid extension order. *See id.* § 101.026 (providing that the trial court may render a SAPCR order "orally in the presence of the court reporter").

However, the Department argues that the trial court rendered a valid extension order on February 1, 2019, in response to Father's motion for continuance. The Department observes that after the hearing, the trial court made an entry in the case management system explaining that Father's counsel had "just recently got[ten] notice of her appointment" to represent Father and "[could not] get ready nor [be] available for trial which was set on 2/27/2019." The entry continued, "Court granted extension and reset on or before 4/30/19. LDD." According to the Department, this "docket entry" constitutes an order that extends the deadline.

Generally, docket sheet entries are insufficient to constitute a decree of the court. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). In a SAPCR, the family code alters the default rule: a trial court may render an order "in writing, including on the court's docket sheet or by a separate written instrument." *In re M.G.F.*, No. 2-07-241-CV, 2008 WL 4052992, at *2 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (mem. op.) (per curiam) (citing Tex. Fam. Code Ann. § 101.026); *In re Ruiz*, 16 S.W.3d 921, 924 (Tex. App.—Waco 2000, orig.

21

proceeding). Thus, at least one court has held that a court may properly use a docket sheet entry to render an order of extension under section 263.401(b), provided that the docket sheet entry includes the information required by that section.[7] *In re C.V.G.*, 112 S.W.3d 180, 183 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (op. on reh'g).

---

[7]In truth, the trial court's written docket sheet makes no mention of an extension. Rather, what the Department refers to as a "docket sheet" notation is actually an entry in the court's case management system. "Case management systems are the programs courts use to manage all the cases in their jurisdictions, including information about the parties involved, hearings, filings, evidence, etc." David Slayton & Megan LaVoie, *The Digital Age: Eight Things to Know About E-Filing in Texas*, 77 Tex. B.J. 898, 899 (2014). While this entry in the case management system is somewhat similar to what would appear in the written docket sheet, it is unclear whether it should be considered a "docket sheet" rendition within the meaning of family code section 101.026. Indeed, when section 101.026 was enacted in 1995, docket sheets were, for the most part, just that: written sheets of paper.

But some courts have recognized that entries in a case management system occupy a roughly similar place in the law as docket sheet notations. Courts have deemed system entries to be equally germane as docket sheet notations for purposes of showing the presentment of a motion in a criminal trial. *See Funderburke v. State*, No. 03-15-00634-CR, 2017 WL 3897209, at *1 (Tex. App.—Austin Aug. 22, 2017, no pet.) (mem. op., not designated for publication); *Nixon v. State*, No. 05-14-01627-CR, 2015 WL 5786580, at *2 (Tex. App.—Dallas Oct. 5, 2015, pet. ref'd) (mem. op., not designated for publication); *Butler v. State*, 6 S.W.3d 636, 638, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g). Similarly, courts have relied on system entries alongside docket sheet notations to reconstruct the facts surrounding hearings, *see Gonzalez v. Pena*, No. 04-16-00668-CV, 2017 WL 3270406, at *1–2 & n.3 (Tex. App.—San Antonio Aug. 2, 2017, no pet.) (mem. op.), and to determine what orders have been properly rendered. *See Burt v. State*, 396 S.W.3d 574, 576 n.2 (Tex. Crim. App. 2013). In *Barnfield v. Tomaski*, the court considered a system entry to be the same in kind as a docket sheet notation, having the same effect (which in that case was no effect). No. 01-96-01052-CV, 1998 WL 163709, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 9, 1998, no pet.) (not designated for publication).

In civil cases, it is said that a docket sheet is an internal "memorandum made for the trial court and clerk's convenience." *See Frommer v. Frommer*, 981 S.W.2d 811, 813

But unlike in *C.V.G.*, the trial court's docket entry here did not include the requisite information. "The court cannot just enter an extension order . . . ." *Dep't of Family & Protective Servs.*, 273 S.W.3d at 643.

> In order for the suit to remain on the court's docket beyond the one-year dismissal date, the court must make specific findings to support the extension order: "the court may not retain the suit on the court's docket" after the one-year dismissal date unless the court makes specific findings as set out in the statute.

*Id.* (quoting Tex. Fam. Code Ann. § 263.401(b)). To retain the suit, section 263.401(b) requires the trial court to find that "extraordinary circumstances necessitate" continuing the Department's temporary managing conservatorship and that continuing the conservatorship is in the child's best interest. Tex. Fam. Code Ann. § 263.401(b). The order must also (1) schedule a new dismissal date, (2) make any necessary temporary orders for the safety and welfare of the child, and (3) set a final hearing date. *Id.* The docket entry satisfied none of these requirements, and it therefore did not extend the one-year dismissal date.

---

n.2 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). In criminal cases, a docket sheet entry has been defined as "merely a record kept by the clerk showing the order and nature of the proceedings for each criminal action." *Flores v. State*, 888 S.W.2d 193, 195 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Regardless, we need not decide today whether an entry in a case management system qualifies as a "docket sheet" notation rendition under section 263.401(b), for even assuming that the entry so qualifies, the content of the entry here is insufficient to extend the dismissal deadline.

Nor could the trial court have extended the deadline once it had already passed. Generally, an order rendered after the trial court loses jurisdiction is void. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) (per curiam); *Alaimo v. U.S. Bank Tr. Nat'l Ass'n*, 551 S.W.3d 212, 218 (Tex. App.—Fort Worth 2017, no pet.). Because the trial court had already been divested of jurisdiction before rendering the order of extension on March 26, 2019, that order was void and did not extend the dismissal deadline.[8] *See G.X.H.*, 2019 WL 2631165, at *4 (explaining that a subsequent order could not "resurrect the trial court's jurisdiction" following automatic dismissal under 263.401); *see also In re A.G.*, No. 13-00-518-CV, 2002 WL 719604, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2002, no pet.) (not designated for publication) (similar).

In the alternative, the Department contends that even if the deadline was not effectively extended, the doctrines of invited error, appellate estoppel, and quasi-estoppel preclude Mother and Father from raising complaints concerning the deadline on appeal. Under the invited-error doctrine, a party cannot complain on appeal that the trial court took a specific action that the complaining party requested. *Dep't of Family &*

---

[8]The March 26, 2019 order did not include language relating back to before the dismissal deadline passed, nor did it attempt to incorporate any prior extension. And although the proposed order of extension presented by the Department included a line for setting the date for the final hearing, in signing the March 26 order, the trial court failed to enter the date in compliance with section 263.401(b), rendering the order ineffective in extending the deadline. As a result, to this day, there remains no viable order extending the statutory deadline.

*Protective Servs.*, 273 S.W.3d at 646; *In re T.W.*, 557 S.W.3d 841, 844 (Tex. App.—Amarillo 2018, pet. denied) (applying doctrine to former version of section 263.401); *In re J.L.C.*, 194 S.W.3d 667, 673 (Tex. App.—Fort Worth 2006, no pet.) (same). The Department observes that Father requested a continuance and that the trial court apparently granted one. According to the Department, Father thereby invited the trial court to exceed the one-year deadline, and he therefore waived any complaint concerning that error on appeal. As to appellate estoppel, a party will be estopped from asserting a position in an appellate court if the party has "unequivocally taken a position in the trial court that is clearly adverse to its position on appeal." *Dep't of Family & Protective Servs.*, 273 S.W.3d at 646. Mother and Father unequivocally stated that they had no objection to the March 26 extension order; thus the Department reasons that they are estopped from contesting the validity of that order. Finally, quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Brooks v. Brooks*, 257 S.W.3d 418, 423 (Tex. App.—Fort Worth 2008, pet. denied). The Department contends it was prejudiced by Mother and Father's acquiescence to and subsequent attack on the extension order.

The thrust of the Department's argument is that any complaint concerning the deadline is waived[9] or estopped. But with the repeal of section 263.402(b), dismissal is jurisdictional, and jurisdiction may not be conferred by waiver or estoppel. Tex. Fam.

---

[9] *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 482 (Tex. 2017) (equating invited error with waiver of an argument).

Code Ann. §§ 263.401(a), (b), .402; *see In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015) (orig. proceeding) (per curiam) (estoppel); *Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007) (per curiam) (waiver); *Comptroller v. Landsfeld*, 352 S.W.3d 171, 174 (Tex. App.—Fort Worth 2011, pet. denied) (both). Subject-matter jurisdiction is a power that exists by operation of law only, and it cannot be conferred upon any court by consent or waiver. *Crawford*, 458 S.W.3d at 928 n.7. And even if invited error or estoppel would otherwise bar Mother and Father's complaints, we are required to review sua sponte issues affecting jurisdiction. *In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (orig. proceeding) (per curiam); *see Gore v. Gore*, No. 05-13-01025-CV, 2014 WL 1018650, at *1 (Tex. App.—Dallas Mar. 17, 2014, no pet.) (mem. op.) (reviewing jurisdiction sua sponte even where appellant's complaint concerning jurisdiction would otherwise be precluded by estoppel); *Castle & Cooke Mortg., LLC v. Diamond T Ranch Dev., Inc.*, 330 S.W.3d 684, 687 (Tex. App.—San Antonio 2010, no pet.) (rejecting argument that estoppel barred appellate court from considering jurisdiction). Accordingly, we need not decide whether Mother's and Father's actions constitute invited error or a basis for estoppel because, even if they did, "such doctrines cannot create subject-matter jurisdiction where it does not otherwise exist." *See Crawford*, 458 S.W.3d at 928 n.7.

The trial court's dismissal deadline was March 4, 2019, but no trial or extension was had by that date. The trial court therefore automatically lost jurisdiction over the Department's termination suit, and the ensuing order of termination was void. Our

26

jurisdiction in an appeal from a void order is limited to determining only that the order or judgment underlying the appeal is void and making appropriate orders based on that determination. *In re M.K.*, 514 S.W.3d 369, 380 (Tex. App.—Fort Worth 2017, no pet.). Where a party appeals a void judgment, the proper practice for a reviewing court is to declare the judgment void, set it aside, and dismiss the case. *Owens*, 907 S.W.2d at 486; *M.K.*, 514 S.W.3d at 380.

As under the former version of the dismissal deadline, this dismissal is without prejudice. *G.X.H.*, 2019 WL 2631165, at *9 ("The fact that [the Department may] have to incur the time and expense of a second termination proceeding does not change the fact that it is entitled to a second bite at the apple—an opportunity not usually available if a deadline is missed."); *see In re M.N.G.*, 147 S.W.3d 521, 528 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) ("A dismissal under section 263.401(a) is without prejudice so that DFPS may refile the case asserting the same grounds for termination as originally alleged."). As then-Justice Hecht once explained of the former version of the statute, "the dismissal contemplated by these provisions is clearly for want of prosecution without reference to the merits of the case," and dismissal for want of prosecution is traditionally without prejudice. *Dep't of Family & Protective Servs.*, 273 S.W.3d at 653 & n.15 (Hecht, J., dissenting) (citing *Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex. 1998) (per curiam)). This result is not altered simply because the amended version of the statute strips the trial court of jurisdiction; because dismissal for lack of "subject matter jurisdiction . . . does not implicate the claims' merits, the trial

27

court must dismiss the claims without prejudice." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g); *see also Waco ISD v. Gibson*, 22 S.W.3d 849, 853 (Tex. 2000) (concluding that jurisdictional dismissal for unripeness should be without prejudice).

## IV. CONCLUSION

Having concluded that the trial court lacked subject-matter jurisdiction at the time of its termination judgment, we declare its judgment void, vacate that judgment, and dismiss the appeal.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: September 24, 2019